UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PASCALE SERVICE CORP.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL TRUCK AND ENGINE CORPORATION and COASTAL INTERNATIONAL TRUCKS, LLC,<br><br>Defendants. | Civil Action No. 1:07-cv-00247-S-DLM |

**MEMORANDUM IN SUPPORT OF DEFENDANT INTERNATIONAL TRUCK AND ENGINE CORPORATION'S MOTION TO DISMISS**

Defendant International Truck and Engine Corporation ("ITEC"), by its attorneys, respectfully submits this memorandum of law in support of its Motion to Dismiss (the "Motion"), pursuant to Fed. R. Civ. P. 12(b)(6), because (1) the Rhode Island Fair Dealership Act does not apply retroactively to this matter; (2) there are no allegations suggesting that ITEC acted without justification when terminating an expressly "at will" contract; and (3) estoppel claims are not an available remedy when an actual contract exists between the parties.

**Preliminary Statement**

This matter revolves around certain contract rights between ITEC and the Plaintiff, even though glaringly absent from the Complaint is a breach of contract claim. The Plaintiff is essentially asking this Court to ignore the expressly at-will nature of the parties' contract. Framed in numerous ways in the three counts of the Complaint against ITEC, the Plaintiff struggles unsuccessfully to use various tort, quasi-contract and newly-enacted statutory remedies,

the latter of which did not even exist at the time of the alleged conduct at issue. As a matter of law, none of these claims can elevate the parties' contractual rights from an at-will status to something more. Each of the Plaintiff's claims against ITEC must be dismissed.

**Statement of Facts**

For purposes of the Motion, the factual allegations in the Complaint are taken as true. The Complaint contains four causes of action, but only the first three are brought against ITEC: (1) an alleged violation of the Rhode Island Fair Dealership Act, R.I. Gen. L. § 6-50-1; (2) tortious interference with contractual relations; and (3) estoppel. The Complaint relies primarily on legal conclusions, with few genuine factual allegations.

The Plaintiff alleges that, on August 21, 1972, it entered into a contract with ITEC, which is attached to the Complaint as Exhibit A. *See* Complaint ¶ 5. Paragraph 11 of the contract made the relationship terminable at will. *See id.*, Exh. A at 2 ("Either party may terminate this agreement at any time without cause by giving written notice to the other party, specifying the effective date of termination."). The Plaintiff further alleges that, at some unidentified time, it entered into a relationship with the Rhode Island Transit Authority to provide genuine ITEC parts. *See id.* ¶ 11. On or about April 9, 2007, ITEC sent a termination letter to the Plaintiff specifying May 10, 2007 as the effective date of termination. *See id.* ¶ 6. Because it is incorporated by reference in the Complaint, a copy of the April 9, 2007 termination letter is attached hereto as Exhibit 1. The Plaintiff also alleges, in a conclusory manner, that the termination period is arbitrary, unreasonable and in bad faith. *See id.* ¶ 16. Nowhere does the Complaint allege that the termination lacked a legitimate justification.

## Argument

### I. The Plaintiff Has Failed to Plead Sufficient *Facts* Under Rule 12(b)(6).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the allegations in the Complaint as true. *See New England Cleaning Servs. v. American Arbitration Ass'n*, 199 F.3d 542, 545 n.2 (1st Cir. 1999). The Court is not bound, of course, to accept as true allegations that are legal conclusions merely masked as facts. *Id.* at 545. Although the non-moving party is entitled to reasonable inferences in its favor, a plaintiff must rely on more than "conclusions or subjective characterizations." *Dewey v. Univ. of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982).

Documents incorporated by reference in the Complaint may be relied on by a defendant at the motion to dismiss stage. *Redondo-Borges v. United States Dept. of Housing and Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005) ("The court must 'assume the truth of all well-pleaded facts,'" which "may be derived from the complaint, whatever documents are either annexed to it or fairly incorporated into it, and any relevant matters that are susceptible to judicial notice."). And allegations need not be accepted as true if they contradict documents on which the action is based. *N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."), *quoted in Clorox Co. P. R. v. P & G*, 228 F.3d 24, 32 (1st Cir. 2000).

The Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), further supports this motion. The *Bell Atlantic* decision abandoned the oft-cited standard (under *Conley v. Gibson*, 355 U.S. 41 (1957)) that limited dismissals for failure to state a claim to those cases in which it appeared, beyond a doubt, that plaintiff could prove no set of facts in

support of a claim that would entitle it to relief. *Bell Atlantic Corp.*, 127 S. Ct. at 1968. The Supreme Court has clarified that a plaintiff must plead sufficient *facts* that, if taken as true, satisfy each essential element of its claims. *Id.* at 1964-65 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks, citation, and editing omitted)). Under these standards, the Plaintiff's allegations are not remotely close to surviving the Motion.

## II. The Rhode Island Fair Dealership Act Has No Application to the April 9, 2007 Termination of the Plaintiff.

Count I of the Complaint relies on the Rhode Island Fair Dealership Act ("RIFDA") as the source of substantive rights that allegedly limit ITEC's ability to terminate its at-will contract with the Plaintiff. RIFDA became effective on June 14, 2007. *See* R.I. Gen. L. § 6-50-1, et seq.; 2007 R.I. Pub. Laws 036. ITEC terminated the Plaintiff, on April 9, 2007, more than two months before RIFDA became effective. *See* Exhibit 1; Complaint ¶ 6. Pursuant to the contract between the parties, ITEC identified in the termination notice an effective date of termination of May 10, 2007. *See* Exh. 1. Hence, the Plaintiff is attempting to invoke a statute that simply was not effective at the time of the pertinent conduct.

There is no support for a retroactive application of RIFDA to an existing agreement, let alone an earlier termination. *See Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983) (holding that amendment to Rhode Island Dealers' Law applied only to prospective agreements because "[t]he Rhode Island cases consistently have required 'clear, strong language' expressing an intent to give a substantive statute retroactive effect before the presumption of prospective effect may be overcome"); *Narragansett Elec. Co. v. Burke*, 122 R.I.

13, 24-25, 404 A.2d 821, 828 (1979) ("[I]t is the rule in Rhode Island that absent legislative guidance to the contrary, a statute will not be given retroactive application if it creates, defines and regulates substantive legal rights.").

Interpreting RIFDA to apply only to prospective contracts, or at least only to prospective terminations, could also obviate any potential violation of the Contracts Clauses of the United States and Rhode Island Constitutions.[1] *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977) ("Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption."); id. at 21 ("[T]he Contract Clause limits otherwise legitimate exercises of state legislative authority, and the existence of an important public interest is not always sufficient to overcome that limitation."); *Scuncio Motors*, 715 F.2d at 13 ("Any other construction of Rhode Island's 1982 amendment [to the Dealers' Law] would present a serious constitutional question of contract impairment. . . ."). It is axiomatic that a law should be construed in a reasonable manner to avoid constitutional infirmities. *See Veilleux v. NBC*, 206 F.3d 92, 122 (1st Cir. 2000) (explaining that state courts, like their federal counterparts, normally seek to avoid constitutional problems when interpreting state law), *citing Edwards J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (court must adopt reasonable

[1] Several circuits have applied dealership or franchise laws prospectively to avoid constitutional issues, or have found constitutional violations when parties have sought to apply such laws retroactively. *See, e.g.*, *Scuncio Motors*, 715 F.2d at 13 (First Circuit applying amendment to Rhode Island Dealers' Law prospectively to avoid constitutional "contract impairment"); *Bob Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 792 (6th Cir. 1999) (statute that limited grounds for termination of dealer "could not be constitutionally applied" to agreements that "predated the adoption of the statute" even if the termination post-dated the effective date of the statute because the manufacturer "acquired its rights under the contract when the parties executed the agreements and not when [it] exercised those rights"); *Holiday Inns Franchising v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994) ("It is absolutely plain, moreover, that the retrospective application of statutes similar to the one here, and in the circumstances that are present in this case, has almost uniformly been held unconstitutional, and this is a datum on which franchisors are presumably allowed to rely while bargaining and in fixing the prices of their licenses.").

interpretation of statute to avoid significant constitutional issues). Here, the most reasonable interpretation, if not the only interpretation, of RIFDA is that it will apply only to prospective activities.

Accordingly, as pleaded in Count I, the Plaintiff cannot avail itself of any remedies under RIFDA for a termination that occurred on April 9, 2007, effective May 10, 2007, which preceded RIFDA's effective date by over a month.

### III. The Plaintiff Has Not Alleged Any Facts Reflecting That Interference With Any Contractual Relationship Was "Without Justification."

The Plaintiff has failed to allege that any purported act of interference with a contract was "without justification." Instead, the Plaintiff has merely alleged, in a conclusory manner, that ITEC intentionally interfered with a contractual relationship of which it was aware. This deficiency is not merely technical, but rather a fatal flaw underlying the tortious interference claim in Count II.

Under Rhode Island law, as well as that in most other jurisdictions, "to establish a prima facie case of intentional interference with contract, aggrieved parties ***must allege*** and prove not only that the putative tortfeasors intended to do harm to the contract but that they did so ***without the benefit of any legally recognized privilege or other justification***." *Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000) (emphasis added). This element is sometimes referred to as the "legal malice" requirement of intention interference claims. *Feinstein v. Brown*, 432 F. Supp. 2d 258, 268 (D.R.I. 2006) (Smith, J.) ("To satisfy the intentional interference element, [plaintiffs] must show that [the defendant] acted with 'legal malice,' meaning that [the defendant] had an intent to do harm without justification." (internal quotation marks omitted)); *Pride Hyundai, Inc. v. Chrysler Fin. Co. LLC*, 263 F. Supp. 2d 374, 399 (D.R.I. 2003) (Smith, J.)

(citing to Rhode Island and Massachusetts law and holding that, "[m]ost grievous to this claim, however, is the fact that Plaintiffs have not shown that [the defendant] acted with 'legal malice,' *i.e.,* 'the intent to do harm without justification'"), *aff'd on other grounds*, 369 F.3d 603 (1st Cir. 2004).

Here, the Plaintiff cannot in good faith allege that the termination was "without justification" when all ITEC did was invoke its contractual right to terminate the relationship under Paragraph 11 of the parties' written agreement. *See* Complaint, Exh. 1 at 2.[2] The Plaintiff is essentially asking this Court to rewrite the parties' contract, though there is no actual or even possibly viable claim for reformation. Nowhere in the Complaint is there a single *fact* reflecting an unjustified act by ITEC, or any sort of improper purpose. *Belliveau Building Corp.*, 763 A.2d at 631 (a party is "privileged" to take actions based on an "objectively colorable belief" of one's legal rights, "even if they also hoped to 'bury' [the plaintiff] or drive it out of business in the process" because "where law is unsettled, belief in validity of claim cannot be said to be unreasonable"). The Plaintiff has not even alleged that ITEC wanted to cause it harm, let alone that ITEC acted with other than an objectively colorable belief in its rights under Paragraph 11 of the parties' contract. Accordingly, Count II must be dismissed.

## IV. The Plaintiff Cannot Pursue its Estoppel Claim Because it Has an Actual and Binding Contract with ITEC.

The Rhode Island Supreme Court has explained that estoppel claims are unavailable when the parties are bound by an express contract between them:

---

[2] The Plaintiff suffers the same fatal flaw in its tortious interference claim against Defendant Coastal International Trucks, LLC ("Coastal"), which appears in Count IV of the Complaint. In addition, the Plaintiff fails in Count IV to allege an actual breach of any contractual obligation by ITEC that Coastal caused, which also precludes success by the Plaintiff, as a matter of law.

> "The doctrine of estoppel is an equitable doctrine that will operate to bar a person from denying liability when the party makes 'a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance and injustice can be avoided only by enforcement of the promise.'" *General Accident Insurance Co. of America v. American National Fireproofing, Inc.*, 716 A.2d 751, 755 (R.I.1998) (quoting *Criterion Leasing Group v. Gulf Coast Plastering & Drywall,* 582 So.2d 799, 800 (Fla.Dist.Ct.App.1991). . . . The court, however, may not invoke the doctrine of equitable estoppel to expand the scope of coverage of an insurance policy. . . . **Additionally, quasi-contractual remedies such as equitable estoppel are inapplicable when the parties are bound by an express contract.** *See JN Exploration & Production v. Western Gas Resources, Inc.*, 153 F.3d 906, 910 (8th Cir.1998) (interpreting North Dakota law); *Hodgkins v. New England Telephone Co.,* 82 F.3d 1226, 1232 (1st Cir.1996) (interpreting Maine law); *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 939 (6th Cir.1989) (interpreting Michigan Law); *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987) (interpreting Pennsylvania law).

*Zarrella v. Minn. Mut. Life Ins. Co.*, 824 A.2d 1249, 1260 (R.I. 2003) (emphasis added and internal editing omitted); *see Southex Exhibitions, Inc. v. R. I. Builders Ass'n.*, 279 F.3d 94, 104 (1st Cir. 2002) (party could not base estoppel claim on ambiguous statements or conduct as part of effort to elevate a contract into a partnership because "equitable estoppel is 'extraordinary' relief, which 'will not be applied unless the equities *clearly* [are] balanced in favor of the part[y] seeking relief'" (emphasis and editing in original)).

In Count III, the Plaintiff erroneously attempts to expand its contractual rights against ITEC through a vehicle of "estoppel." Under the *Zarrella* and *Southex Exhibitions* lines of cases, however, the Plaintiff cannot invoke the doctrine of estoppel because the parties' express obligations, rather than an after-the-fact attempt to rewrite the parties' contract, govern their relationship. Count III must therefore be dismissed.

**Conclusion**

Based on the foregoing, the Complaint should be dismissed in its entirety, with prejudice. The deficiencies in the Complaint are of an incurable nature, based on the undisputed, actual and binding contract between the parties.

Respectfully submitted,

INTERNATIONAL TRUCK AND ENGINE CORPORATION

By its attorneys,

July 16, 2007

/s/ Stephen T. Armato

Stephen T. Armato
Cetrulo & Capone
The Heritage Building
321 South Main Street
Providence, RI 02903
(401) 274-7850
Fax: (401) 274-9670
Email: sarmato@cetcap.com

Of counsel:

Barry S. Pollack
Joshua L. Solomon
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
Fax: (617) 338-2880

**CERTIFICATE OF SERVICE**

I, Stephen T. Armato, herby certify that on July 16, 2007 I served the foregoing memorandum of law in support of defendant's motion to dismiss by causing a true and correct copy of the same to be sent by operation of the Court's Electronic Cases Filing ("ECF") System to those individuals designated for electronic service by the ECF System in this case and by first-class mail to the following:

Richard M. Pierce, Esq.
Roberts, Carroll, Feldstein & Pierce Inc.
Ten Weybosset Street, 8th Floor
Providence, RI 02903 rpeirce@rcfp.com

Mark B. Morse, Esq.
111 Wayland Avenue
Providence, RI 02906 mark@moreselawoffice.com

Barry S. Pollack, Esq.
Joshua L. Solomon, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109 via first class mail

/s/ Stephen T. Armato

Stephen T. Armato