UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PASCALE SERVICE CORP.,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL TRUCK AND ENGINE CORPORATION and COASTAL INTERNATIONAL TRUCKS, LLC,<br><br>Defendants. | Civil Action No. 1:07-cv-00247-S-DLM |

**INTERNATIONAL TRUCK AND ENGINE CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant International Truck and Engine Corporation ("ITEC"), by its attorneys, respectfully submits this memorandum in opposition to the Motion to Dismiss (the "Motion") by the Plaintiff, Pascale Service Corp. The Plaintiff concedes that the requisites for diversity jurisdiction exist between it and ITEC, but claims that the presence of a local defendant, Coastal International Trucks, LLC ("Coastal") destroys diversity. Because Coastal has been improperly joined in this action, its citizenship should be ignored for jurisdictional purposes, and the motion to remand should be denied.

## Preliminary Statement

This Court possesses diversity jurisdiction over this matter. The Plaintiff is a Rhode Island corporation, and ITEC is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois. The parties do not contest that more than $75,000 is in dispute in this action, exclusive of interest and costs. The only issue for

purposes of the motion to remand is whether Coastal's citizenship should be ignored. Glaringly absent from the Plaintiff's submission, in connection with its motion to remand, is any factual basis for suing Coastal in this action.

In a desperate effort to avoid this Court's jurisdiction based on a finding of improper joinder, the Plaintiff argues that ITEC failed to verify a petition of removal. In so doing, the Plaintiff relies on outdated dicta from a 1921 opinion, which predated the enactment of the Federal Rules of Civil Procedure and the pertinent removal statutes.

**Statement of Facts**

The Complaint contains four causes of action, but only the first three are brought against ITEC: (1) an alleged violation of the Rhode Island Fair Dealership Act, R.I. Gen. L. § 6-50-1; (2) tortious interference with contractual relations; and (3) estoppel. The Complaint relies primarily on legal conclusions, with few genuine factual allegations. Pascale has added a final count against only Coastal, with a label of tortious interference with contract.

The Plaintiff alleges that, on August 21, 1972, it entered into a contract with ITEC, which is attached to the Complaint as Exhibit A. *See* Complaint ¶ 5. Paragraph 11 of the contract made the relationship terminable at will. *See id.*, Exh. A at 2 ("Either party may terminate this agreement at any time without cause by giving written notice to the other party, specifying the effective date of termination."). On or about April 9, 2007, ITEC sent a termination letter to the Plaintiff specifying May 10, 2007 as the effective date of termination. *See id.* ¶ 6. A copy of the April 9, 2007 termination letter is attached to the Certification of Steven Mroczkowski ("Mroczkowski Cert.") as Exhibit 1. The Plaintiff also alleges, in a conclusory manner, that the termination period is arbitrary, unreasonable and in bad faith. *See id.* ¶ 16.

Nowhere in the Complaint or motion to remand does the Plaintiff assert that the termination lacked a legitimate justification. In fact, the termination was based on poor performance. *See* Mroczkowski Cert. ¶¶ 4-8. The Plaintiff missed purchasing quotas several years in a row. *See id.* ¶ 4. Furthermore, Coastal did not cause the termination of the Plaintiff's relationship with ITEC. *See id.* ¶ 8.

Though not in the Complaint, Pascale now asserts certain "beliefs" of its owner that Coastal may have been involved in ITEC's decision to terminate its relationship with Pascale. James Pascale has attested to the following:

> 1) "[s]hortly after it began its operations [in 1995], [he] believe[s] that Coastal began to put pressure on International to terminate its relationship with Pascale";
>
> 2) he also believes that, "[a]s a result" of this pressure from Coastal, ITEC "limited some of the warranty work Pascale was performing" on ITEC new vehicles;
>
> 3) Mr. Pascale also "belie[ves]" that, in December 2006, "Coastal representatives met with [ITEC] representatives at the Marriott Courtyard Hotel, Woburn, MA and discussed, among other things the termination of Pascale as an authorized parts supply dealer"; and,
>
> 4) from December 2006 through April 2007, Mr. Pascale believes that "there was a series of meetings involving Coastal and [ITEC] where Coastal encouraged [ITEC] to terminate its relationship with Pascale."

Mr. Pascale does not assert, and his Complaint does not allege, any specific fact reflecting that Coastal did or said anything improper or without justification in connection with any communications with ITEC. There is no allegation that the Plaintiff misrepresented anything, used undue leverage, or did anything else beyond, at most, ordinary forms of competition. Nothing in the record reflects an investigation by the Plaintiff into its claim against Coastal before filing this action.

**Argument**

**I. Notices of Removal Need Not be Verified.**

The Plaintiff asserts erroneously that removal papers must be verified. Nowhere in the applicable removal statutes or procedural rules is there any requirement that a notice of removal should be verified. *See* 28 U.S.C. §§ 1441, 1446. In support for its argument, the Plaintiff misplaces reliance on *Wilson v. Republic Iron & Steel Co.*, a 1921 case which was decided more than twenty years before the present removal statutes were even enacted. 257 U.S. 92 (1921). The removal statutes then in effect, at the time the Supreme Court decided *Wilson*, differed from those in effect today because, among other things, the former statutes expressly required the use of verified petitions, a practice long since abandoned. *See* Law of Mar. 3, 1911, ch. 231, 36 Stat. 1094, 1101 (repealed 1948), Law of Jan. 20, 1914, ch. 11, 38 Stat. 278 (repealed).

In a superficial effort to avoid this obvious flaw to its argument, the Plaintiff also cites to *Mills v. Allegiance Healthcare Corp.*, which quoted, for other purposes, a portion of *Wilson* that included dicta regarding the verification of removal petitions under the repealed statutes. 178 F. Supp. 2d 1, 6 (D. Mass. 2001). In *Mills*, the removing parties did not even submit a verified removal petition and no party raised any issue with regard to verification. Yet the *Mills* court found that diversity jurisdiction existed, notwithstanding the presence of a local defendant, based

on a fraudulent joinder theory. The *Mills* decision does not support the Plaintiff's position, but actually instructs this Court to deny the motion to remand.

In sum, for several decades, there has been absolutely no requirement that a removing party must verify its removal papers. This Court should therefore reject the Plaintiff's procedural argument and deny its motion to remand.

## II. The Citizenship of Improperly Joined Parties Should Be Ignored For Purposes of Determining Diversity of Citizenship.

The Plaintiff does not dispute, and it cannot dispute, that diversity jurisdiction exists in this Court if Coastal has been improperly joined. Instead, the Plaintiff argues that it possesses a good faith basis for its claim against Coastal. But the Plaintiff has offered nothing more than insufficient "beliefs" that, even if true, would not constitute tortious interference. Coastal is a procedurally misjoined or fraudulently joined party whose citizenship should be ignored for purposes of determining the existence of diversity of citizenship in this action, pursuant to 28 U.S.C. § 1332.

"[A] finding of fraudulent joinder" is similar to, and bears an implicit finding that, "the plaintiff has failed to state a cause of action against the fraudulently joined defendant, *see* 1A J. Moore, Moore's Federal Practice ¶ 0.161[2] at nn. 5, 6 …." *Polyplastics, Inc. v. Transconex*, 713 F.2d 875, 877 (1st Cir. 1983) (holding that a finding of improper joinder is not immediately appealable). The court in *Arriaga v. New England Gas Co.*, 483 F. Supp. 2d 177 (D.R.I. 2007) recently explained the doctrine of fraudulent joinder, or procedural misjoinder, as follows:

> In deciding whether joinder is fraudulent on the ground that there is no basis for the claims asserted against a non-diverse defendant, some courts require the removing defendant to demonstrate "*no possibility,* based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court."



{B0663449; 4}

* * * *

> Other courts have described the test as "whether there is any *reasonable basis* for predicting" that the plaintiff may prevail under state law. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir.1999)(emphasis added); *see Travis v. Irby,* 326 F.3d at 647 ("there must at least be a *reasonable basis* for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder"); *Krueger v. R.J. Reynolds Tobacco Co.,* 2006 WL 39095 at *3 (S.D. Ill. Jan. 06, 2006)(quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir.1992)) (" 'At the point of decision [of whether joinder was fraudulent] the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?' "); *Rinehart v. Consol. Coal Co.,* 660 F. Supp. at 1141 ("The test for fraudulent joinder is whether there is an arguably reasonable basis for predicting that state law might impose liability on the facts involved"). Still other courts have treated the two tests as synonymous. *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d at 573.
>
> Close examination reveals that these differences are more apparent than real and that the Court's task is to determine whether it is reasonable to expect that the plaintiff may succeed on its claim. As the 8th Circuit stated in *Filla v. Norfolk S. Ry.* Co., 336 F.3d 806, 810 (8th Cir. 2003), "despite the semantical differences, there is a common thread in the legal fabric guiding fraudulent joinder review" which is "the *reasonableness* of the basis underlying the state claim." (emphasis added). *See Badon v. RJR Nabisco Inc.,* 236 F.3d 282, 286 n. 4 (5th Cir. 2000) (rejecting argument that a "*mere theoretical possibility* of recovery under local law - no matter how remote or fanciful - suffices to preclude removal").

*Id.* at 182-83. Hence, the issue is whether there is a "reasonable" basis in law and fact on which the Plaintiff can succeed against the local defendant. *Id.*; *see also Lawrence Builders, Inc. v. Kolodner*, 414 F. Supp. 2d 134, 137-38 (D.R.I. 2006) (to similar effect); *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 66-68 (D.R.I. 2002) (same).

For procedural misjoinder purposes, an intent to evade federal jurisdiction "may be imputed where one willfully closes his eyes to information within his reach." *Wecker v. Nat'l*

*Enameling & Stamping Co.,* 204 U.S. 176, 185 (1907) (looking beyond the pleadings and upholding a ruling of fraudulent joinder where there was no factual basis for the claim against the non-diverse defendant); *see Mills v. Allegiance Healthcare Corp*., 178 F. Supp. 2d 1, 8 (D. Mass. 2001) (finding misjoinder where "Plaintiffs have virtually no possibility of success [against the local defendant] because they have failed to allege or provide evidence" supporting their theory of liability).

**A. The Plaintiff Has Not Alleged or Asserted Any Facts Reflecting That Interference With Any Contractual Relationship Was "Without Justification."**

The Plaintiff has failed to assert any facts reflecting that any purported act of interference with a contract was "without justification." Instead, in the Complaint, the Plaintiff has merely alleged, in a conclusory manner, that Coastal intentionally interfered with the Plaintiff's at-will contractual relationship with ITEC. This deficiency is not merely technical, but rather a fatal defect that precludes the tortious interference claim in Count IV.

Under Rhode Island law, as well as that in most other jurisdictions, "to establish a prima facie case of intentional interference with contract, aggrieved parties ***must allege*** and prove not only that the putative tortfeasors intended to do harm to the contract but that they did so ***without the benefit of any legally recognized privilege or other justification***." *Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000) (emphasis added). This element is sometimes referred to as the "legal malice" requirement of intention interference claims. *Feinstein v. Brown*, 432 F. Supp. 2d 258, 268 (D.R.I. 2006) (Smith, J.) ("To satisfy the intentional interference element, [plaintiffs] must show that [the defendant] acted with 'legal malice,' meaning that [the defendant] had an intent to do harm without justification." (internal quotation marks omitted)); *Pride Hyundai, Inc. v. Chrysler Fin. Co. LLC,* 263 F. Supp. 2d 374, 399 (D.R.I. 2003) (Smith, J.)



{B0663449; 4}

(citing to Rhode Island and Massachusetts law and holding that, "[m]ost grievous to this claim, however, is the fact that Plaintiffs have not shown that [the defendant] acted with 'legal malice,' *i.e.,* 'the intent to do harm without justification'"), *aff'd on other grounds*, 369 F.3d 603 (1st Cir. 2004).

Here, the Plaintiff cannot in good faith allege that the termination was "without justification" when all ITEC did was invoke its contractual right to terminate the relationship under Paragraph 11 of the parties' written agreement. *See* Complaint, Exh. 1 at 2. The Plaintiff is essentially asking this Court to rewrite the contract between it and ITEC, though there is no actual or even possibly viable claim for reformation. Nowhere in the Complaint is there a single *fact* reflecting an unjustified act by Coastal, or any sort of improper purpose. *Belliveau Bldg. Corp.*, 763 A.2d at 631 (a party is "privileged" to take actions based on an "objectively colorable belief" of one's legal rights, "even if they also hoped to 'bury' [the plaintiff] or drive it out of business in the process" because "where law is unsettled, belief in validity of claim cannot be said to be unreasonable").

The Plaintiff has not alleged, let alone identified evidence, suggesting that Coastal wanted to cause it harm or acted with anything other than an objectively colorable belief in its rights to compete with the Plaintiff. A party cannot be hauled into tortious interference claims based solely on beliefs that it attempted to compete. Accordingly, there was no legitimate basis for the Plaintiff's claim against Coastal.

**B. There Has Been No Breach of Contract by ITEC.**

The Plaintiff has not alleged an actual breach of contract by ITEC. Paragraph 11 of the contract between the Plaintiff and ITEC made the relationship terminable at will. *See* Complaint, Exh. A at 2 ("Either party may terminate this agreement at any time without cause by giving

written notice to the other party, specifying the effective date of termination."). On or about April 9, 2007, ITEC sent a termination letter to the Plaintiff specifying May 10, 2007 as the effective date of termination. *See id.* ¶ 6. There has been no breach, merely the exercise of an express right to terminate the relationship at will.

### C. The Rhode Island Fair Dealership Act Has No Application to the April 9, 2007 Termination of the Plaintiff.

The motion to remand refers to the Rhode Island Fair Dealership Act ("RIFDA") as the source of some sort of substantive rights that allegedly limit ITEC's ability to terminate its at-will contract with the Plaintiff. RIFDA became effective on June 14, 2007. *See* R.I. Gen. L. § 6-50-1, et seq.; 2007 R.I. Pub. Laws 036. ITEC terminated the Plaintiff on April 9, 2007, more than two months before RIFDA became effective. *See* Complaint ¶ 6. Pursuant to the contract between the parties, ITEC identified in the termination notice an effective date of termination of May 10, 2007. *See* Mroczkowski Aff., Exh. 1. Hence, to support its claims, the Plaintiff is attempting to invoke a statute that simply was not effective at the time of the pertinent conduct.

There is no support for a retroactive application of RIFDA to an existing agreement, let alone an earlier termination. *See Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983) (holding that amendment to Rhode Island Dealers' Law applied only to prospective agreements because "[t]he Rhode Island cases consistently have required 'clear, strong language' expressing an intent to give a substantive statute retroactive effect before the presumption of prospective effect may be overcome"); *Narragansett Elec. Co. v. Burke*, 122 R.I. 13, 24-25, 404 A.2d 821, 828 (1979) ("[I]t is the rule in Rhode Island that absent legislative guidance to the contrary, a statute will not be given retroactive application if it creates, defines and regulates substantive legal rights.").

Interpreting RIFDA to apply only to prospective contracts, or at least only to prospective terminations, could also obviate any potential violation of the Contracts Clauses of the United States and Rhode Island Constitutions. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977) ("Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption."); *id.* at 21 ("[T]he Contract Clause limits otherwise legitimate exercises of state legislative authority, and the existence of an important public interest is not always sufficient to overcome that limitation."); *Scuncio Motors*, 715 F.2d at 13 ("Any other construction of Rhode Island's 1982 amendment [to the Dealers' Law] would present a serious constitutional question of contract impairment. . . .").[1] It is axiomatic that a law should be construed in a reasonable manner to avoid constitutional infirmities. *See Veilleux v. NBC*, 206 F.3d 92, 122 (1st Cir. 2000) (explaining that state courts, like their federal counterparts, normally seek to avoid constitutional problems when interpreting state law), *citing Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (court must adopt reasonable interpretation of statute to avoid significant constitutional issues). Here, the most reasonable

[1] Several circuits have applied dealership or franchise laws prospectively to avoid constitutional issues, or have found constitutional violations when parties have sought to apply such laws retroactively. *See*, *e.g.*, *Scuncio Motors*, 715 F.2d at 13 (First Circuit applying amendment to Rhode Island Dealers' Law prospectively to avoid constitutional "contract impairment"); *Bob Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 792 (6th Cir. 1999) (statute that limited grounds for termination of dealer "could not be constitutionally applied" to agreements that "predated the adoption of the statute" even if the termination post-dated the effective date of the statute because the manufacturer "acquired its rights under the contract when the parties executed the agreements and not when [it] exercised those rights"); *Holiday Inns Franchising v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994) ("It is absolutely plain, moreover, that the retrospective application of statutes similar to the one here, and in the circumstances that are present in this case, has almost uniformly been held unconstitutional, and this is a datum on which franchisors are presumably allowed to rely while bargaining and in fixing the prices of their licenses.").

interpretation, if not the only interpretation, of RIFDA is that it will apply only to prospective activities.

Accordingly, the Plaintiff cannot avail itself of RIFDA as a basis for limiting ITEC's termination of the relationship with Coastal on April 9, 2007, effective May 10, 2007, which preceded RIFDA's effective date by more than a month.

**D. Coastal Has Been Fraudulently or Improperly Joined.**

This case presents the epitome of a fraudulent joinder or procedural misjoinder of a local defendant because, in its Complaint, the Plaintiff has not alleged a single *fact* that would support a claim against Coastal, only insufficient legal conclusions. The Plaintiff has failed to allege a basis for, and cannot produce evidence of, a claim against Coastal for tortious interference with contract in Count IV. The Plaintiff possesses no legitimate claim, or even good faith basis for its claim, against Coastal. There is no indication that the Plaintiff, or its counsel, conducted a reasonable investigation into the claim against Coastal, which appears to be nothing more than an after-thought designed to avoid federal jurisdiction. The Plaintiff seeks no damages from Coastal that it does not seek from ITEC as a matter of alleged primary liability. The Plaintiff does not seek equitable relief against Coastal.

In sum, there is no legitimate claim against Coastal. The citizenship of Coastal should therefore be disregarded for purposes of determining that diversity of citizenship exists. Accordingly, this Court should deny the Plaintiff's motion to remand.

**III. The Plaintiff has No Right to an Evidentiary Hearing or Attorneys' Fees.**

The Plaintiff has made certain extraordinary requests, including one for an evidentiary hearing and another for an award of attorneys' fees, to which it is simply not entitled. There is no requirement that a trial court conduct an evidentiary hearing in connection with a motion to

remand. The Plaintiff does not cite to any case law or other authority to demonstrate its entitlement to an evidentiary hearing in connection with its motion to remand. Even cases on which the Plaintiff has relied in its motion, such as *Mills*, rely on at most affidavits. *E.g.*, *Mills*, 178 F. Supp. 2d at 6. Given the utter absence of factual allegations in the Complaint, on which the liability of Coastal could be based, this Court should not indulge the Plaintiff's request for an evidentiary hearing at this preliminary stage of the case.

The Plaintiff's request for attorneys fees is equally misguided. While 28 U.S.C.A. §1447(c) can permit an award of attorneys fees to a party forced to file and prevail on a motion to remand, the award is not automatic and is not granted lightly. The Supreme Court, in *Martin v. Franklin Capital Corp.*, explained that attorneys fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." 546 U.S. 132, 141 (2005). The Plaintiff has not argued, and cannot argue, that ITEC lacked an "objectively reasonable basis" for the removal of this action to federal court. Indeed, the Plaintiff bases its request in part of its meritless argument that the Defendants failed to verify the removal petition. Again, even if the lack of meaningful factual allegations in the Complaint do not result in a finding of procedural misjoinder, such flaws in the Complaint created an objectively reasonable basis for the removal. The Plaintiff's request for attorneys fees should be denied.

## Conclusion

Based on the foregoing, the Plaintiff has procedurally misjoined Coastal, the citizenship of which should be disregarded for purposes of determining that this Court possesses diversity jurisdiction over this matter. The motion to remand should be denied.

Respectfully submitted,

INTERNATIONAL TRUCK AND ENGINE CORPORATION

By its attorneys,

July 26, 2007

/s/ Carl E. Fumarola

Carl E. Fumarola, Bar #6980
Stephen T. Armato, Bar #6395
Cetrulo & Capone LLP
The Heritage Building
321 South Main Street
Providence, RI 02903
(401) 274-7850
Fax: (401) 274-9670
Email: cfumarola@cetcap.com
sarmato@cetcap.com

Of counsel:

Barry S. Pollack
Joshua L. Solomon
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
Fax: (617) 338-2880

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 26, 2007.

/s/ Carl E. Fumarola

Carl E. Fumarola