EXHIBIT 1

# INTERNATIONAL HARVESTER
## SERVICE PARTS
### DEALER SALES AGREEMENT

AGREEMENT, entered into August 21 (Month and Date), 1972, to be effective August 21 (Month and Date), 1972, between INTERNATIONAL HARVESTER COMPANY, with a District Office located at 61 North Beacon Street, Boston, Massachusetts 02134 (City and State) (hereinafter referred to as the "Company"), and Pascale Service Corporation (Rhode Island Corporation) (State whether an individual, partnership or corporation. If a corporation, show name of State in which incorporated) with a retail place of business at 51 Delta Drive (Street Address), Pawtucket (City), Rhode Island (State) (hereinafter referred to as the "Dealer").

1. **PURPOSE OF AGREEMENT:** The purpose of this agreement is to govern the relations between the Dealer and the Company in promoting the sales of the Service Parts covered by this agreement, in their purchase and sale by the Dealer.

2. **SERVICE PARTS DEFINED:** The term "Service Parts" as used herein refers to:

(a) All Service Parts manufactured or offered for sale by the Company, which are:

(1) designated as parts (as distinguished from attachments) in the Company's published parts catalogs or parts price lists in effect and as revised from time to time, and

(2) which are for use on, or for the repair of, any of the Company's Products included in each of the product lines printed below which is marked with an "x" or which are specifically described below on the lines provided for that purpose:

- ☐ **Farm Equipment.**
- ☐ **Industrial Equipment.**
- ☒ **Motor Trucks.**

(Note: Indicate the items covered by this agreement by placing an "x" in the square preceding the applicable product line or lines.

If only a specific item or group of items is covered, indicate by describing such item or group of items on the lines provided below.)

________________________________________

________________________________________

The term "Service Parts" shall not include simple parts or assemblies identified by the Company as "shipping packages," "field improvement packages" or "conversion packages."

It is understood that the Company has the right to determine whether an item is a part or an attachment and may at any time or from time to time change the designation of an item as a part or attachment without notice and without incurring any liability to the Dealer.

**3. ORDERS FOR SERVICE PARTS:** All of the Dealer's purchases of Service Parts under this agreement shall be covered by written orders, using forms furnished by the Company, which shall not be binding on the Company until accepted in writing or delivery has been made. Accepted orders will not be subject to cancellation without the consent of the Company.

**4. PRICES, TERMS AND DISCOUNTS:** All of the Dealer's purchases of Service Parts shall be at the Company's prices, terms and discounts in effect at time of shipment. Such prices, terms and discounts are subject to change at any time without notice. However, if the price of any Service Part ordered by the Dealer shall be increased before such part is shipped, the Dealer may, by written notice to the Company at any time within ten (10) days after notice by the Company of such price increase, cancel the order insofar as it relates to the Service Part to which such price increase shall be applicable.

**5. CONTINGENCIES AFFECTING DELIVERIES:** The Company shall not be responsible for delay or failure to deliver Service Parts due to causes beyond its reasonable control.

**6. ROUTING AND RISKS OF SHIPMENT:** The Company reserves the right to route all shipments. Delivery to a carrier of Service Parts for the account of the Dealer shall constitute delivery to the Dealer, and the Company shall not be responsible for loss or damage after such delivery.

**7. CHANGES IN DESIGN:** The Company reserves the right to make changes in specifications, construction or design of Service Parts at any time, and any Service Parts so changed will be accepted by the Dealer in fulfillment of existing orders. The Company shall not be obligated to furnish such changes for Service Parts previously delivered.

**8. USE OF TRADE NAMES AND SIGNS:** The Dealer agrees not to use the name "International Harvester" (or either of those words) or any other trade names or trademark owned by the Company as part of his firm name and, upon termination of this agreement, to remove all signs bearing any trade names and trademarks of the Company and to discontinue the use of such trade names and trademarks in connection with any business conducted by him.

**9. SALES ON CREDIT:** When credit is extended to the Dealer on Service Parts, it is agreed that title to such parts, with right of repossession for default, shall remain in the Company until full payment has been made. Upon request, Service Parts purchased on credit shall be covered by title retention or security instruments acceptable to the Company. Prior to full payment, Dealer shall have no right to sell or dispose of Service Parts, except in the ordinary course of trade, and the proceeds of any such resale shall be considered the property of the Company in lieu of the goods so sold and shall be held in trust for it and subject to its order.

Nothing herein shall release the Dealer from payment for all Service Parts ordered and delivered under this agreement and after delivery to the Dealer, such Service Parts shall be held at the Dealer's risk and expense in respect to loss and damage from any cause and taxes and charges of any kind.

**10. INSURANCE:** The Dealer shall at all times keep the Service Parts for which he is indebted to the Company or to International Harvester Credit Corporation covered by Fire and Extended Coverage insurance for their fair insurable value in a company or companies approved by the Company, with loss payable to the Company and International Harvester Credit Corporation as their interest may appear. Upon request, the Dealer shall deliver to the Company copies of such policies or Certificates of Insurance issued by the insurers.

**11. TERMINATION:** Either party may terminate this agreement at any time without cause by giving written notice to the other party, specifying the effective date of termination. Termination date shall not be prior to the date of such notice. This agreement automatically terminates upon the death of the Dealer if the Dealer is an individual, upon the death of a partner if the Dealer is a partnership, or upon any change in the partnership, if the Dealer is a partnership, and upon any change in the business structure of the Dealer, as shown on page 1 of this agreement.

Upon termination, all indebtedness of the Dealer to the Company or International Harvester Credit Corporation shall become immediately due and payable. All unfilled orders placed by the Dealer shall be cancelled unless otherwise agreed between the parties.

Upon termination, the Company will repurchase from the Dealer those Service Parts purchased as Service Parts from the Company under this and prior agreements, on hand in the Dealer's place of business which are for the products referred to in Section 2, and which are salable as new and provided their exact part numbers appear in the Company's parts return list in effect upon the date of termination.

The prices which the Company will pay for such parts shall be 105 per cent of the Company's current F.O.B. factory unit prices to dealers in effect at the time the parts are received by the Company, less all discounts allowed. Upon request the Dealer will, at his own expense, deliver such parts to the Company's District Office or nearest Parts Depot. The Company shall be released from its obligation to repurchase service parts if the Dealer does not submit to the Company his list of parts within thirty days of the effective date of the termination and return his parts, authorized to be returned, within thirty days after notification to return is received from the Company.

**12. DEALER NOT COMPANY'S AGENT:** The Dealer is not the Company's agent in any respect and is not authorized to incur any obligations or to make any promises or representations in its behalf.

**13. PARTIES BOUND, Etc.:** This agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns. It may not be assigned by either party without the written consent of the other party, except that the Company may, however, assign this agreement to any of its subsidiary or affiliated corporations, without the consent of the Dealer.

**14. AGREEMENT COMPLETE:** All understandings and agreements between the parties are contained in this agreement, which supersedes and terminates all previous agreements between the parties pertaining to the sale of the Service Parts covered by this agreement. No representative of the Company, other than one of its corporate officers, has authority to modify, change, add to, or waive any of the provisions of this agreement.

**15. APPROVAL OF AGREEMENT:** This agreement shall not be binding upon the Company until approved in writing hereon by its District Manager, or Assistant District Manager, and when so approved shall be effective from the date inserted in the heading of this agreement as the effective date.

DEALER

Firm Name Pascale Service Corporation

By [signature]

President

(Official Capacity or Title)

INTERNATIONAL HARVESTER COMPANY

By [signature]

(Company Representative)

Approved this 12th day

of Sept. , 19 72

By [signature]

(District Manager)

Credit Approval

[signature]

(Credit Manager)