UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PASCALE SERVICE CORP., Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:07-cv-00247-S-DLM |
| INTERNATIONAL TRUCK AND ENGINE CORPORATION and COASTAL INTERNATIONAL TRUCKS, LLC, Defendants. | ) | |

**INTERNATIONAL TRUCK AND ENGINE CORPORATION'S MEMORANDUM IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION TO AMEND**

## TABLE OF CONTENTS


I. Preliminary Statement ..... 1

II. Background ..... 1

A. Procedural History ..... 1

B. Pascale's Current and Proposed Allegations ..... 2

III. Argument ..... 4

A. Leave to Amend Should Be Denied Where the Amended Pleading Would Fail to State a Claim Upon Which Relief Could be Granted. ..... 4

B. The Proposed Amended Complaint Fails to State a Claim for Anticipatory Repudiation Against IC ..... 4

C. Pascale Does Not Allege That it Demanded an Adequate Assurance of Performance. ..... 7

D. Pascale Does Not Allege That all Conditions Precedent Have Been Satisfied, Including its Performance of all of its Obligations Under the Amtran Contract ..... 9

IV. Conclusion ..... 10

Defendant International Truck and Engine Corporation ("ITEC"), by its attorneys, respectfully submits this memorandum in partial opposition to the motion to amend filed by Plaintiff Pascale Service Corp. ("Pascale"). ITEC does not oppose the withdrawal of any claims, but objects to the inclusion of a new claim that would be futile to pursue.

## I. PRELIMINARY STATEMENT

Pascale had an at-will contract with ITEC. When ITEC exercised its right to terminate that contract, Pascale sought to avoid the termination by filing a dilatory suit against ITEC and defendant Coastal International Trucks, LLC ("Coastal"). Pascale's plan to tie the contract's termination up in litigation began to unravel, however, when this Court found that Pascale had fraudulently joined Coastal as a defendant, refused to remand the case to state court, and dismissed Coastal from the case. Now Pascale faces ITEC's pending motion to dismiss for failure to state any viable claims.

In a last-gasp effort to save its foundering case, Pascale filed its motion for leave to amend. In addition to removing two of the three claims against ITEC (which ITEC does not oppose), Pascale's proposed amended complaint would add a new defendant – IC Corporation ("IC") – and a claim against IC for breach of contract. As with the claims against ITEC that are the subject of ITEC's motion to dismiss, these proposed additions would fail at the pleadings stage. It would thus be futile to grant Pascale leave to amend to add IC and the breach of contract claim against it. ITEC respectfully requests that the Court deny such leave.

## II. BACKGROUND

### A. Procedural History

The currently operative complaint contains four causes of action, one of which has already been dismissed. The first three are against ITEC for (1) violation of the Rhode Island Fair Dealership Act, R.I. Gen. L. § 6-50-1 ("RIFDA"), (2) tortious interference with contractual

relations, and (3) estoppel. The fourth claim was against Coastal for tortious interference with contractual relations.

Pascale originally filed its complaint in Rhode Island Superior Court. ITEC removed the case to this Court on diversity grounds, asserting that Pascale had fraudulently joined Coastal as a defendant solely to defeat diversity. ITEC also filed a motion to dismiss the three claims against it pursuant to Fed. R. Civ. P. 12(b)(6). Following removal, Pascale filed a motion to remand the case to state court, which ITEC opposed. The Court stayed briefing on ITEC's motion to dismiss until after a decision on Pascale's motion to remand.

Last month, the Court denied Pascale's motion to remand. In doing so, the Court found that Pascale had fraudulently joined Coastal, alleging factually against it nothing more than its place of residence, and dismissed Coastal from the case. Pursuant to the Court's order staying briefing on ITEC's motion to dismiss, Pascale then filed an opposition to ITEC's motion. Along with that opposition, Pascale filed a motion for a preliminary injunction and its motion for leave to amend.

**B. Pascale's Current and Proposed Allegations**

In its currently operative complaint, Pascale alleges that it entered into a contract with ITEC on August 21, 1972 (the "ITEC Contract"), which granted to Pascale the right to serve as an authorized dealer of ITEC truck parts and to service ITEC trucks. *See* Complaint ¶ 5, Exh. A at 1. The ITEC Contract was expressly terminable at will. *See id.*, Exh. A at 2 ("Either party may terminate this agreement at any time without cause by giving written notice to the other party, specifying the effective date of termination."). On or about April 9, 2007, and consistent

with its at-will termination rights, ITEC sent a termination letter to Pascale. *See id.* ¶ 6. Based on this termination, Pascale alleges that ITEC violated RIFDA. *See id.* ¶¶ 7-8.[1]

In its proposed amended complaint, Pascale would persist in its RIFDA claim against ITEC and would add a breach of contract claim against IC, which Pascale seeks to join as a new defendant. Pascale's proposed amendment would also remove the tortious interference and estoppel claims against ITEC. ITEC does not oppose the removal of the two claims against it, but does oppose joining IC (and adding a claim against IC).

In support of its new claim, Pascale's proposed amended complaint would allege that Pascale entered into a contract with IC on September 7, 1994, when IC was known as Amtran Corporation (the "Amtran Contract"). *See* Proposed Am. Complaint ¶ 8. According to the copy of the Amtran Contract appended to Pascale's proposed amended complaint, and other exhibits Pascale has filed with its proposed amended complaint, the Amtran Contract appointed Pascale as a "Support Dealer," authorized to sell after-market Amtran bus parts and to service products sold by Amtran "Primary Dealers." *See* Proposed Am. Complaint, Exhs. 2, 3, & 4.

The proposed amended complaint further alleges that ITEC's parent company, non-party Navistar International Corporation, and IC's parent company, non-party Navistar International Transport Corporation, are affiliates. *See id.* ¶¶ 2, 5. The proposed amended complaint alleges no further connection between ITEC and IC. Pascale goes on to allege that in August 1999, something called the "International Parts Business Center" assumed responsibility for sales and distribution functions under the Amtran Contract, and that "International" policies were made applicable to Amtran dealers' parts orders. *See id.* ¶¶ 19-20. The proposed amended complaint

[1] The complaint also includes claims for estoppel and tortious interference with an alleged contract between Pascale and the Rhode Island Public Transit Authority. *See* Complaint ¶¶ 9-21. Pascale has abandoned these two claims, both in its proposed amended complaint and in its opposition to ITEC's motion to dismiss.

then asserts, in conclusory fashion, that *ITEC's* termination of the ITEC Contract constituted an anticipatory breach by *IC* of the Amtran Contract. *See id.* ¶ 22.

## III. ARGUMENT

### A. Leave to Amend Should Be Denied Where the Amended Pleading Would Fail to State a Claim Upon Which Relief Could be Granted.

Notwithstanding the oft-cited language from Fed. R. Civ. P. 15(a) instructing that "leave [to amend] shall be freely given when justice so requires," a court should deny such leave where pursuing the claim would be futile. *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). A court assesses futility of a proposed amendment using the same standard that it applies to a Rule 12(b)(6) motion to dismiss. *Id.* Thus, where the proposed amended complaint would fail to state a claim upon which relief could be granted, the court should deny leave to file that proposed amended complaint.

Pascale's proposed amended complaint does not purport to bolster in any way the RIFDA claim against ITEC. Rather, the proposed amendment simply seeks to add IC and a claim against IC (in addition to dropping the intentional interference and estoppel claims against ITEC). Thus, the question of futility turns on whether the proposed amended complaint, if filed, would state a valid claim against IC. It would not.

### B. The Proposed Amended Complaint Fails to State a Claim for Anticipatory Repudiation Against IC.

Pascale's proposed amended complaint contains insufficient factual allegations to support its breach of contract claim against IC. The proposed amended complaint does not allege an actual breach by IC. Instead, Pascale's breach of contract claim is premised on the conclusory assertion that IC has committed an anticipatory repudiation of the Amtran Contract. *See* Proposed Am. Complaint ¶ 22. Pascale's reasoning appears to be that ITEC's termination of the

ITEC Contract would necessarily equate to IC's anticipatory refusal to perform under the Amtran Contract. According to Pascale's reasoning, ITEC's April 2007 termination of the ITEC Contract amounted to an anticipatory repudiation by IC of the Amtran Contract.

The proposed amended complaint fails, however, to allege *factual* support for this theory. Even taking as true the few facts concerning IC that appear in the proposed amended complaint, there is no basis from which to infer an anticipatory repudiation by IC from ITEC's termination of the ITEC Contract. Without such factual allegations, Pascale is left with only its naked legal conclusions, which do not suffice to state a valid cause of action against IC. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and editing omitted)).

Recognizing that suits for breach of contract in the absence of an actual breach should be rare, the law imposes a high burden for establishing anticipatory repudiation of a contract. In this case, Arkansas law sets that burden, as the Amtran Contract contains a choice of law provision selecting Arkansas law. *See* Proposed Am. Complaint, Exh. 2, at 6. Under Arkansas law, there can be no anticipatory repudiation unless one can show "a present, positive and unequivocal refusal to perform." *Kellum v. Gray*, 590 S.W. 2d 33, 34 (Ark. Ct. App. 1979). Furthermore, "the Supreme Court of Arkansas has applied the doctrine of anticipatory breach . . . rather sparingly." *White R. Valley Broadcasters, Inc. v. William B. Tanner Co.*, 487 F. Supp. 725, 730 (E.D. Ark. 1979). Here, the proposed amended complaint contains no factual

allegations that in any way evince a refusal by IC to perform the Amtran Contract, let alone a "positive and unequivocal refusal."[2]

The *only* factual allegations that purport to speak to IC's supposed repudiation are (1) International Parts and Business Center's 1999 assumption of sales and distribution responsibilities under the Amtran Contract; (2) the applicability, as of August 1999, of "International" policies to parts orders by Amtran dealers; and (3) ITEC's termination of the ITEC Contract. The proposed amended complaint does not even allege that "International Parts and Business Center" or "International" are synonymous with ITEC (as opposed to IC's alleged parent Navistar *International* Transport Corporation, ITEC's alleged parent Navistar *International* Corporation, or some other company in the Navistar/International family of companies). In addition, these factual allegations fail entirely to suggest that IC was able to perform under the Amtran Contract only if the ITEC Contract remained in effect. Nor would International Parts Business Center's assumption of responsibilities under the Amtran Contract, or the applicability of "International" policies to dealer orders, suggest in any other way that the Amtran Contract and the ITEC Contract somehow became inextricably linked, such that ITEC's termination of the latter amounted to a "positive and unequivocal refusal" by IC, a separate entity, to perform under the Amtran Contract.

In fact, not only do these allegations fail to suggest that one must have a contract with ITEC in place to receive performance under the Amtran Contract, but Pascale has relied on submissions that confirm the independence of these contracts. Pascale's own exhibits to the

[2] Even if Rhode Island law applied, the standard would not differ materially. In Rhode Island, there can be no anticipatory repudiation unless the defendant "intended to repudiate its contractual obligation unqualifiedly, unconditionally and unequivocally." *D'Oliveira v. Rare Hospitality Int'l, Inc.*, No. P.C. 99-1835, 2003 WL 1223854, at *2 (R.I. Super. Ct. Feb. 13, 2003).

proposed amended complaint undermine its anticipatory repudiation theory.[3] One of the so-called "policy change" documents on which Pascale relies to link the Amtran Contract to "International" policies makes clear that it *was* possible for a dealer to have an Amtran dealership without also having a dealership with another "International" entity, such as ITEC. More specifically, Pascale's exhibit explains that because International policies would apply to Amtran orders, those dealers that are "Amtran unique accounts" would be sent information regarding such policies. *See* Proposed Am. Complaint, Exh. 4. In the absence of contrary *factual* allegations, this documentary language reflects that the applicability of "International" policies to Amtran contracts did *not* mean that one must have another dealership in place (let alone the particular dealership that ITEC terminated) to continue receiving the benefits of being an Amtran dealer.

Because nothing in the proposed amended complaint could, if true, establish a "positive and unequivocal refusal" by IC to perform the Amtran Contract as a result of ITEC's termination of the ITEC Contract, the proposed amended complaint would fail to state a claim against IC for breach of contract. Permitting an amendment to add such a claim would, therefore, be futile.

### C. Pascale Does Not Allege That it Demanded an Adequate Assurance of Performance.

When a party to a contract faces a reasonable uncertainty as to the other party's willingness to perform, but not an unequivocal refusal to perform, the potentially aggrieved party

---

[3] Where a plaintiff invokes a document in support of its complaint, and appends that document to the complaint, a court assessing the validity of the claims may consider not just the complaint's allegations, but also the contents of the annexed document. *See Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 55 (1st Cir. 2006). Furthermore, to the extent that allegations in the complaint conflict with the contents of attached documents, the documents control. *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."), *quoted in Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

possesses only a specific and limited remedy. If "reasonable grounds for insecurity arise with respect to the performance," the insecure party "may in writing demand adequate assurance of due performance." Ark. Code. § 4-2-609(1). If the party to whom such request is made fails to provide such adequate assurance, the contract will be deemed repudiated. *Id.* § 4-2-609(4).[4]

Pascale cannot, however, rely on any supposed insecurity regarding IC's willingness to perform to save its anticipatory repudiation claim. First, the lack of any pleaded nexus between Pascale's Amtran Contract with IC, and ITEC's termination of the ITEC Contract, discussed above, leaves Pascale without any pleaded "reasonable grounds for insecurity." Where a defendant's conduct fails to provide a reasonable grounds for insecurity, there is no right to demand adequate assurance, and there can be no finding of repudiation. *See, e.g.*, *Ford Motor Credit Co. v. Ellison*, 974 S.W. 2d 464, 467-68 (Ark. 1998) (refusing to find reasonable grounds for insecurity as to the performance on a note backed by a security interest in a car, despite the fact that law enforcement authorities had seized the car and threatened to do so again).

Second, even were termination of the ITEC Contract sufficient to instill in Pascale reasonable insecurity as to IC's performance of the Amtran Contract, Pascale does not allege in the proposed amended complaint that it sought from IC an assurance of performance prior to attempting to bring its proposed claim. In fact, Pascale admits in its memorandum in support of its motion to amend that it did not even come to believe that it had a contract with IC until September of this year. *See* Memo. in Support of Motion to Am., at 2. Not having pled that it demanded an assurance of performance, Pascale cannot save its anticipatory repudiation claim by resorting to a claim of insecurity as to IC's willingness to perform. *See H&W Indus. v.*

[4] This provision of the Uniform Commercial Code has also been adopted in Rhode Island, where it is codified as R.I. Gen. L. § 6A-2-609.

*Benning Constr. Co.*, No. CA 94-1045, 1995 WL 574506, at *3 (Ark. Ct. App. Sept. 27, 1995) ("In any event, appellant has failed to present evidence to satisfy the requirements of § 4-2-609. . . . [T]he record refutes any claim that appellant sought or failed to receive other assurance of due performance, in writing or otherwise. . . .").

**D. Pascale Does Not Allege That all Conditions Precedent Have Been Satisfied, Including its Performance of all of its Obligations Under the Amtran Contract.**

Pascale's proposed new claim is futile for the additional, independent reason that the proposed amended complaint fails to include an essential element of any breach of contract claim. A plaintiff cannot state a breach of contract claim unless all conditions precedent have been satisfied, including performance of all material obligations that were due at the time of the alleged breach. *See Taylor v. George*, 212 S.W. 3d 17, 23 (Ark. Ct. App. 2005) ("'It is an elementary rule that a person who has himself broken a contract cannot recover on it.'" (*quoting Witherspoon v. Choctaw Culvert & Mach. Co.*, 56 F.2d 984, 988 (8th Cir. 1932) (barring an anticipatory repudiation claim because of plaintiff's failure to perform))). Pascale's proposed amended complaint entirely omits this element, containing not a single allegation about Pascale's performance under the Amtran Contract. As reflected in the Amtran Contract itself, Pascale had various reporting and other obligations. Had Pascale been able, consistent with its obligations under Fed. R. Civ. P. 11, to plead performance on its part, it would no doubt have done so. It did not. Without such an allegation, Pascale's claim against IC would fail on its face, rendering its proposed amendment futile for this additional reason.

## IV. CONCLUSION

For the foregoing reasons, ITEC respectfully requests that the Court deny as futile Pascale's motion to amend to the extent it seeks to add IC to the complaint.

Respectfully submitted,

INTERNATIONAL TRUCK AND ENGINE CORPORATION,

By its attorneys,

November 5, 2007

/s/ Carl E. Fumarola
Stephen T. Armato, Bar # 6395
Carl E. Fumarola, Bar # 6980
Cetrulo & Capone LLP
The Heritage Building
321 South Main Street
Providence, RI 02903
(401) 274-7850
Fax: (401) 274-9670
Email: sarmato@cetcap.com
cfumarola@cetcap.com

Barry S. Pollack (*pro hac vice*)
Joshua L. Solomon (*pro hac vice*)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
Fax: (617) 338-2880

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2007, the foregoing memorandum in partial opposition to Plaintiff's motion to amend, filed through the Electronic Cases Filing ("ECF") System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non registered participants.

/s/ Carl E. Fumarola
Carl E. Fumarola