UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PASCALE SERVICE CORP., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:07-cv-00247-S-DLM |
| INTERNATIONAL TRUCK AND ENGINE CORPORATION and COASTAL INTERNATIONAL TRUCKS, LLC, | ) | |
| Defendants. | ) | |

**INTERNATIONAL TRUCK AND ENGINE CORPORATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I. Preliminary Statement ..... 1

II. Background ..... 2

III. Standard ..... 3

IV. Argument ..... 3

A. Pascale Has Failed to Show a Likelihood of Success on the Merits. ..... 3

i. Rhode Island Law Prohibits an Interpretation of RIFDA That Would Give it Retroactive Effect ..... 4

ii. Interpreting RIFDA as Applying Only Prospectively Would Avoid Significant Constitutional Problems ..... 8

iii. The Few Cases on Which Pascale Relies Concerning Dealership Statutes Provide no Support for Applying RIFDA Retroactively. ..... 10

B. Pascale Has not Demonstrated the Requisite Threat of Irreparable Harm. ..... 15

C. Pascale's Conduct Makes Equitable Relief Unwarranted ..... 19

V. Conclusion ..... 21

Defendant International Truck and Engine Corporation ("ITEC"), by its attorneys, respectfully submits this memorandum in opposition to the motion for a preliminary injunction filed by Plaintiff Pascale Service Corp. ("Pascale").

## I. PRELIMINARY STATEMENT

Pascale had an at-will contract with ITEC pursuant to which Pascale served as a dealer of ITEC truck parts (the "Agreement"). When ITEC exercised its contractual right to terminate the Agreement, Pascale agreed to a termination date, but then sought to avoid the termination by filing a dilatory suit against ITEC and defendant Coastal International Trucks, LLC ("Coastal"). Pascale's plan to tie the Agreement's termination up in litigation began to unravel, however, when this Court found that Pascale had fraudulently joined Coastal as a defendant, refused to remand the case to state court, and dismissed Coastal from the case.

Since this Court's ruling on Pascale's motion to remand, Pascale has abandoned two of its three claims against ITEC. Pascale persists, however, in its claim under the Rhode Island Fair Dealership Act, R.I. Gen. L. § 6-50-1, et seq. ("RIFDA"), through which Pascale seeks to avoid ITEC's termination of the Agreement notwithstanding an unambiguous provision permitting ITEC to terminate at will. This claim fails as a matter of law because RIFDA is not retroactive; ITEC provided notice of termination to Pascale before RIFDA's effective date; and the parties entered into the Agreement, which expressly gives ITEC an at-will termination right, decades before RIFDA became law. On that basis, ITEC has moved for dismissal of the RIFDA claim. Pascale responded to ITEC's motion to dismiss by seeking a preliminary injunction that would prohibit ITEC from taking further action to implement the termination. Pascale's RIFDA claim is, however, legally deficient on its face; *a fortiori*, Pascale has not satisfied its high burden of showing that it is entitled to extraordinary relief in the form of a preliminary injunction.

## II. BACKGROUND

Pascale's complaint contains four causes of action, one of which has already been dismissed. Three of the claims are against ITEC for (1) violation of RIFDA, (2) tortious interference with contractual relations, and (3) estoppel. The fourth claim, now dismissed, was against Coastal for tortious interference with contractual relations.

Pascale alleges that it entered into the Agreement with ITEC on August 21, 1972, which granted to Pascale the right to serve as an authorized dealer of ITEC truck parts and to service ITEC trucks. *See* Complaint ¶ 5, Exh. A at 1. The Agreement was expressly terminable at will by either party. *See id.*, Exh. A at 2 ("Either party may terminate this agreement at any time without cause by giving written notice to the other party, specifying the effective date of termination."). On or about April 9, 2007, and consistent with its at-will termination rights, ITEC sent a termination letter to Pascale. *See id.* ¶ 6. Based on this termination, Pascale alleges that ITEC violated RIFDA. *See id.* ¶¶ 7-8.

Pascale originally filed its complaint in Rhode Island Superior Court. ITEC removed the case to this Court on diversity grounds, asserting that Pascale had fraudulently joined Coastal as a defendant solely to defeat diversity. ITEC also filed a motion to dismiss the three claims against it pursuant to Fed. R. Civ. P. 12(b)(6). Following removal, Pascale filed a motion to remand the case to state court, which ITEC opposed. The Court stayed briefing on ITEC's motion to dismiss until after a decision on Pascale's motion to remand.

Last month, the Court denied Pascale's motion to remand. In doing so, the Court found that Pascale had fraudulently joined Coastal, alleging factually against it nothing more than its place of residence, and dismissed Coastal from the case. Pursuant to the Court's order staying

briefing on ITEC's motion to dismiss, Pascale then filed an opposition to ITEC's motion. At the same time, Pascale filed its motion for a preliminary injunction, which ITEC now opposes.[1]

## III. STANDARD

A preliminary injunction may issue only where four requirements are satisfied: (1) the party seeking the injunction has no adequate remedy at law and will suffer irreparable harm if no injunction issues during the pendency of the litigation; (2) the harm that the party seeking the injunction would suffer outweighs any harm to the adverse party resulting from the injunction; (3) the party seeking the injunction is likely to succeed on the merits of its claim; and (4) the injunction, if issued, will not have an adverse effect on the public interest. *Fireside Nissan, Inc. v. Fanning*, 828 F. Supp. 989, 996 (D.R.I. 1993).

The party seeking the preliminary injunction bears the burden to demonstrate that all four of these conditions exist. *Id.* Furthermore, because "a preliminary injunction is an extraordinary and drastic remedy," the movant must make a "clear showing" of its entitlement to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation marks omitted).

## IV. ARGUMENT

### A. Pascale Has Failed to Show a Likelihood of Success on the Merits.

Of the three claims against ITEC, only one is relevant to Pascale's motion for a preliminary injunction. Pascale did not offer any argument in opposition to ITEC's motion to dismiss the other two claims – for tortious interference and estoppel – and has thus abandoned these two claims. Nor does Pascale rely on those two claims in support of its motion for a preliminary injunction. Pascale's motion, therefore, can succeed only if Pascale demonstrates a

[1] Pascale also filed a motion for leave to amend the complaint, which ITEC is opposing in a separate objection and brief filed simultaneously with this objection. Pascale's proposed amended complaint would continue to include its claim against ITEC under RIFDA.

likelihood of success on its RIFDA claim. Far from being able to show a likelihood of success, Pascale's RIFDA claim fails even to state a viable cause of action.[2]

***i. Rhode Island Law Prohibits an Interpretation of RIFDA That Would Give it Retroactive Effect.***

RIFDA went into effect on June 14, 2007. Pascale and ITEC entered into the Agreement 35 years earlier. *See* Complaint ¶ 5. ITEC terminated the contract on April 9, 2007, more than two months before RIFDA became law. *See id.* ¶ 6. Pursuant to the Agreement, ITEC identified May 10, 2007 as the effective date of termination. *See* Termination Ltr., attached as *Exhibit 5* to Pascale's Memo. in Oppos. to Mot. to Dismiss and in Support of Mot. for Preliminary Injunction ("Memo."). Pascale is thus attempting to invoke a statute that simply was not effective at the time of the pertinent conduct.

There is no basis under Rhode Island law for applying RIFDA retroactively to an existing agreement, let alone to a termination that preceded the effective date of RIFDA. The default rule in Rhode Island is that statutes affecting substantive rights do not apply retroactively. While the legislature can overcome this presumption, it must do so with clear, unambiguous language. As the First Circuit held in rejecting retroactive application of another Rhode Island dealership law (governing new-vehicle dealerships), "[t]he Rhode Island cases consistently have required clear, strong language expressing an intent to give a substantive statute retroactive effect before the presumption of prospective effect may be overcome." *Scuncio Motors, Inc. v. Subaru of New*

[2] Pascale's memorandum in support of its motion for a preliminary injunction confusingly contains a brief section on Pascale's proposed claim against IC Corporation ("IC"). That claim, however, appears not in the currently operative complaint, but in the proposed amended complaint that Pascale submitted along with its motion for leave to amend. That motion has not been granted, and ITEC has opposed the addition of IC and the claim against IC. As there is no such claim in the case at this stage, that proposed claim cannot provide the basis for a preliminary injunction. In fact, IC is not even a party to the case. Thus, even were the Court to grant Pascale's motion for leave to amend, Pascale would still have to serve IC with process, and IC would have to be given the opportunity to oppose Pascale's motion for a preliminary injunction, before the claim against IC could serve as the basis for an injunction.

*England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983) (internal quotation marks omitted); *see also Narragansett Elec. Co. v. Burke*, 404 A.2d 821, 828 (R.I. 1979) ("[I]t is the rule in Rhode Island that absent legislative guidance to the contrary, a statute will not be given retroactive application if it creates, defines and regulates substantive legal rights."). No such "clear, strong language" indicating an intention to apply RIFDA retroactively appears anywhere in RIFDA.

Pascale's reliance on cases discussing retroactive effects of "remedial" legislation misconstrues the holdings of those cases. *See* Memo. at 13-14 (*citing Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367 (R.I. 1994); *Fox v. Fox*, 350 A.2d 602 (R.I. 1976); and *Grinnell v. Marine Guano & Oil Co.*, 13 R.I. 135 (1880)). Pascale notes that these opinions permit retroactive application of "remedial" laws in certain situations, and that RIFDA identifies itself as a "remedial" statute. From this, Pascale asserts that RIFDA can be applied retroactively here. The flaw in Pascale's reasoning, however, is that the word "remedial" has different meanings in these two contexts. The word "remedial" can be used to refer to a law that grants a *new* substantive remedy or means of redress. It can also refer, however, to a law that relates to the enforcement of an *existing* substantive right. In the latter sense, the term refers to something akin to a procedural change in a preexisting legal regime. *Compare, e.g.*, BLACK'S LAW DICTIONARY (7th Ed. 1999) (first definition of "remedial": "*Affording* or *providing* a remedy; *providing* the means of obtaining redress" (emphasis added)), *with id.* (third definition of "remedial": "Of or relating to a means of enforcing an *existing* substantive right; *procedural*" (emphasis added)).

Pascale improperly conflates these two meanings of "remedial" to assert incorrectly that RIFDA is a "remedial" statute in the sense used in the cases Pascale cites. RIFDA does not represent a procedural or mechanical change to the enforcement of preexisting substantive rights.

To the contrary, RIFDA created an entirely new statutory regime, granting to dealers a host of legal rights that previously did not exist under Rhode Island law. In contrast, the cases Pascale cites use "remedial" solely and explicitly in the sense of altering existing mechanisms for relief. In fact, those cases expressly distinguish "remedial" laws, as they use the term, from laws that provide substantive rights. For example, in *Pion*, the Rhode Island Supreme Court addressed whether a change to a preexisting law (the workers' compensation statute) should be applied retroactively. In doing so, the court wrote as follows:

> Substantive statutes, which create, define, or regulate substantive legal rights, *must be applied prospectively*. In contrast, remedial and procedural statutes, *which do not impair or increase substantive rights* but rather prescribe methods for enforcing such rights, may be construed to operate retroactively.

*Pion*, 637 A.2d at 371 (emphasis added and internal citation omitted).

Even more to the point, the other two cases Pascale cites expressly state that a statute cannot fall within the "remedial" exception to prospectivity if it impairs existing contractual rights. In one of those cases, which involved a change in the scope of the Family Court's jurisdiction, the Rhode Island Supreme Court held as follows:

> [A] statute lacking the requisite specificity or the necessary implication [for retroactive effect] may still be applied retroactively if it qualifies as a so-called remedial or procedural statute. Such an exception may be employed *if its invocation neither violates vested rights nor impairs contractual obligations*.

*Fox*, 350 A.2d at 604 (emphasis added and internal citation omitted). Similarly, in *Grinnell*, which involved civil joinder procedures, and which Pascale also cites, the Rhode Island Supreme Court explained that "[i]t is not an insuperable objection to a remedial statue that it affects pending suits, if it affects them remedially, and *neither violates vested rights nor impairs the obligation of contracts*." 13 R.I. at 135 (emphasis added).

Here, not only is it impossible to argue that RIFDA is a mere procedural act, or an act that simply alters a preexisting regime in a non-substantive way, but any retroactive application of RIFDA would significantly affect ITEC's contractual right to terminate the contract with Pascale at will – a right that vested 35 years ago when the Agreement was formed. *See Bob Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 792 (6th Cir. 1999) (holding that the terminating party "acquired its rights under the contract when the parties executed the agreements and not when [it] exercised those rights"). In fact, were RIFDA applied retroactively, it would substantively and dramatically alter the Agreement from one expressly terminable at will, to one that essentially required ITEC to work with Pascale indefinitely. Pascale's own cited cases expressly prohibit such an application. In short, Pascale's reliance on cases involving "remedial" legislation and on RIFDA's self-identification as a "remedial" act is a semantic sleight of hand that cannot overcome Rhode Island's default rule against applying substantive statutes retroactively.

Nor can Pascale save its claim through its suggestion that RIFDA applies because the Agreement's termination was not to take effect until (by agreement of the parties) June 30, 2007, two weeks after the effective date of RIFDA. Because ITEC's at-will termination right vested upon entry into the Agreement, the actual date of termination is irrelevant. Regardless of when ITEC sought to avail itself of the right to terminate, application of RIFDA to prevent ITEC from doing so would strip ITEC of this right, substantively interfering with ITEC's contractual right. Several courts that have faced this very issue have rejected Pascale's reasoning. *See, e.g.*, *Bob Tatone Ford*, 197 F.3d at 792 (statute that limited grounds for termination of dealer did not apply to agreements that "predated the adoption of the statute," even if the termination post-dated the effective date of the statute because the manufacturer "acquired its rights under the contract

when the parties executed the agreements and not when [it] exercised those rights"); *McAleer Buick-Pontiac Co. v. General Motors Corp.*, 419 N.E. 2d 608, 611 (Ill. App. Ct. 1981) ("[R]etroactivity is defined in terms of the effect a law would have on vested contractual rights, not in terms of the time when a party happens to assert those rights.").

In addition, ITEC issued its termination notice on April 9, 2007, more than two months before RIFDA took effect. In fact, the April 9 termination notice set May 10, 2007, also before RIFDA's effective date, as the date on which termination would take effect (the June 30, 2007 date on which Pascale relies resulted from *Pascale's* request and agreement to postpone the implementation of the termination, purportedly for the purpose of ensuring a smooth termination). Even if the date of the Agreement did not control, the notice date, as opposed to the date for implementation of the termination, would be significant, because the conduct that RIFDA regulates is the timing and contents of termination notices, not each practical step to effectuate a termination. R.I. Gen. L. § 6-50-4. Because ITEC issued its termination notice before RIFDA became law, the relevant action took place before RIFDA went into effect, even assuming *arguendo* that RIFDA could reach any actions under the Agreement.

***ii. Interpreting RIFDA as Applying Only Prospectively Would Avoid Significant Constitutional Problems.***

Interpreting RIFDA to apply only to prospective contracts, or at least only to prospective termination notices, could also obviate any potential violation of the Contracts Clauses of the United States and Rhode Island Constitutions. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 21 (1977) ("[T]he Contract Clause limits otherwise legitimate exercises of state legislative authority, and the existence of an important public interest is not always sufficient to overcome that limitation."). It is axiomatic that a law should be construed in a reasonable manner to avoid constitutional infirmities. *See Veilleux v. NBC*, 206 F.3d 92, 122 (1st Cir. 2000)

(explaining that state courts, like their federal counterparts, normally seek to avoid constitutional problems when interpreting state law), *citing Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (holding that court must adopt reasonable interpretation of statute to avoid significant constitutional issues). Here, not only is the most reasonable interpretation of RIFDA that it applies only to prospective activities – indeed, the only reasonable interpretation in light of Rhode Island's strong presumption against retroactivity, as discussed above – but that interpretation also avoids a serious potential conflict with the U.S. and Rhode Island Constitutions.

In *Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983), the First Circuit applied this very doctrine of constitutional avoidance as an aid in interpreting Rhode Island's law governing new-vehicle dealerships. As the *Scuncio* court explained in refusing to apply the statute retroactively, "[a]ny other construction of Rhode Island's 1982 amendment [to the Dealers' Law] would present a serious constitutional question of contract impairment." *Id.* at 13. Several other Courts of Appeals have likewise applied dealership or franchise laws prospectively to avoid constitutional issues, or have found constitutional violations to the extent such laws applied retroactively. *Bob Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 792 (6th Cir. 1999) (statute that limited grounds for termination of dealer "could not be constitutionally applied" to agreements that "predated the adoption of the statute"); *Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994) ("It is absolutely plain, moreover, that the retrospective application of statutes similar to the one here, and in the circumstances that are present in this case, has almost uniformly been held unconstitutional, and this is a datum on which franchisors are presumably allowed to rely while bargaining and in fixing the prices of their licenses."); *see also McAleer Buick-Pontiac Co. v. General Motors*

*Corp.*, 419 N.E. 2d 608, 611 (Ill. App. Ct. 1981) ("Suffice it to say that requiring GMC to renew perhaps for years a relationship which it had a contractual right not to renew would be a substantial impairment of GMC's contractual rights, bringing into question the constitutionality of the Act. . . . When two constructions of a law are possible and one of them would perhaps render the statute unconstitutional, courts will give the law the construction which avoids the constitutional problem. Our decision to give the Illinois Motor Vehicle Franchise Act only prospective application is, of course, in conformity with this rule of construction.").

In contrast to the Agreement at issue here, new dealership arrangements can be subject to RIFDA requirements, with all parties on notice to adjust the consideration for such arrangements as appropriate in light of those new requirements. To apply RIFDA to the Agreement here, however, would impose on ITEC a substantially different bargain than what it reached decades ago, or than it may now offer potential dealers in a post-RIFDA environment. This is exactly the sort of issue that the Contracts Clause addresses. Only a prospective application of RIFDA can avoid this constitutional dilemma.

***iii. The Few Cases on Which Pascale Relies Concerning Dealership Statutes Provide no Support for Applying RIFDA Retroactively.***

Pascale's reliance on *Ford Motor Co. v. Meredith Motor Co., Inc.*, 257 F.3d 67 (1st Cir. 2001), is unhelpful to Pascale, as that opinion expressly refuses to decide whether a New Hampshire statute regulating dealerships applied retroactively. In fact, the First Circuit in *Ford* actually *vacated* the District Court opinion that had found the New Hampshire statute to be retroactive, holding that the District Court should have deferred to an ongoing state court proceeding involving the same retroactivity issue and the same parties. *Id.* at 71-73. The First Circuit's *Ford* opinion thus provides no support for Pascale's retroactivity argument.

Furthermore, while suggesting that the vacated District Court opinion as to the New Hampshire statute is relevant here, Pascale tellingly avoids even so much as a citation to that opinion. Not only did the First Circuit vacate that opinion, but the District Court's reasoning fails to provide Pascale with any support for its claim that RIFDA is retroactive. In fact, the contrast between the situation in *Ford* and the situation here serves only to undermine Pascale's argument. The District Court in *Ford* pointed to two features of the New Hampshire law that the Court viewed as statements of a legislative intent to make the statute retroactive. Such features do not, however, appear in RIFDA. First, the New Hampshire statute was expressly made applicable to "'*all* written or oral agreements.'" *Ford Motor Co. v. Meredith Motor Co.*, No. CIV. 99-456-B, 2000 DNH 186, 2000 WL 1513779, at *5 (D.N.H. Aug. 24, 2000) (internal editing omitted) (*quoting* N.H. Rev. Stat. § 357-C:6I), *vacated by Ford*, 257 F.3d 67. The District Court held that "[t]his language is a clear and unqualified statement of legislative intention to subject both new and existing dealer agreements to the Act's general regulatory requirements." *Id.* Second, the District Court contrasted the "all" agreements language with another provision of the statute that was explicitly limited to "new" agreements. *Id.* (*citing* N.H. Rev. Stat. § 357-C:6II). As the District Court explained, "[i]f the legislature intended to similarly limit the Act's other requirements [to new agreements], it is reasonable to assume that it would have used similar limiting language," rather than the "all" agreements language for which it opted. *Id.* RIFDA not only contains no reference to "all" agreements, but it also does not contain any clear juxtaposition between a provision that uses all-inclusive language and a provision that is expressly limited to new contracts. Thus, in contrast to the New Hampshire statute, nothing in RIFDA can overcome Rhode Island's presumption against retroactivity, which persists in the absence of "clear, strong language expressing an intent to give a substantive

statute retroactive effect." *Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983) (internal quotation marks omitted).

Another difference between the *Ford* case and the one before this Court undercuts Pascale's argument with respect to the constitutional problems that would arise were RIFDA to apply retroactively. As the *Ford* court explained, whether a statute would bring about a "substantial impairment" of a party's contractual rights is among the considerations in determining whether that statute's retroactivity poses a Contracts Clause problem. *See Ford*, 2000 WL 1513779, at *6. Chief among the factors used in assessing "substantial impairment" is the foreseeability of the change in law, as of the time the parties entered into the contract. *Id.* In *Ford*, the statute at issue imposed certain requirements before a manufacturer could alter a dealer's market area, or add a competitor to that market area. *Id.* at *3. That statute, however, did not fill a void with respect to the regulated matter, as did RIFDA. Rather, the New Hampshire law merely replaced a preexisting statute that already regulated such dealerships, and that was in place when the parties entered into their contract. The old law included a provision that barred "unconscionable" actions against dealers and that gave dealers a right to challenge relocation decisions. *Id.* at *8. Based on this history of similar regulation, which applied at the time the parties entered into their contract, the District Court concluded that the "changes [to the law] are in the direct path of the plausible (though of course not inevitable) evolution of New Hampshire's program for regulating automobile dealership contracts and constituted only small and predictable steps along that path." *Id.* (internal quotation marks and editing omitted).

In contrast, there is no plausible argument that RIFDA was comparably foreseeable when ITEC and Pascale entered into their contract 35 years before RIFDA became law. Nor did RIFDA replace an existing statutory regime that already regulated the relationship between ITEC

and Pascale (let alone a regime that regulated the relationship in ways similar to RIFDA's proscriptions). Previously, Rhode Island law impacted only new-vehicle dealerships, not parts suppliers. In addition, RIFDA has not been enacted as a revision to existing law, but rather as a new and independent statute governing relationships previously free from pertinent statutory requirements.

The only other cases on which Pascale relies concerning regulation of dealerships are *Scuncio*, discussed above, and *Anderson's Vehicle Sales, Inc. v. OMC-Lincoln*, 287 N.W. 2d 247 (Mich. Ct. App. 1979). Neither of these opinions supports Pascale's retroactivity argument. Pascale cites to *Scuncio* simply for its paragraph distinguishing the Michigan Appeals Court's *Anderson's Vehicle Sales* opinion, a case which Pascale erroneously contends supports its retroactivity claim. As an initial matter, while citing to *Scuncio* for this purpose, Pascale glosses over the actual holding in *Scuncio*, which not only comes from the First Circuit, but which applies Rhode Island law and is directly on point. As mentioned above, *Scuncio* relies explicitly on Rhode Island's strong presumption against retroactivity, acknowledges the Contract Clause problems with retroactivity where there is a preexisting contract, applies the doctrine of interpreting statutes so as to avoid that constitutional problem, and ultimately holds that the statute did *not* have retroactive effect. *Scuncio* is thus powerful authority against applying RIFDA retroactively.

Nor does the distinction that *Scuncio* recognized between the statute at issue in that case and the Michigan statute at issue in *Anderson's Vehicle Sales* support Pascale's claim. The Michigan statute included the phrase "[n]otwithstanding the terms, provisions, or conditions of a dealer agreement." *Anderson's Vehicle Sales*, 287 N.W. 2d at 249 (internal quotation marks omitted). Without elaboration, the Michigan court found that this language, combined with the

fact that the statute was to take immediate effect, suggested a legislative intent to make the statute retroactive. *Id.* Apparently, the court read the term "notwithstanding" to suggest application to contracts already in existence. RIFDA does not include such a phrase. Instead, RIFDA refers to what contracts "may not" do (§ 6-50-3(C)), a construction that suggests regulation of the formation of future contracts, or that is at least ambiguous as to timing. More importantly, the court in *Anderson's Vehicle Sales* made no mention of any presumption against retroactivity, much less a strong presumption, as exists under Rhode Island law. As a result, the *Anderson's Vehicle Sales* court, applying Michigan law, did not search for "clear, strong language expressing an intent to give a substantive statute retroactive effect," as a court applying Rhode Island law would be required to do. *Scuncio*, 715 F.2d at 12 (internal quotation marks omitted).

Finally, while noting *Scuncio*'s distinction of *Anderson's Vehicle Sales*, Pascale ignores *Scuncio*'s reliance on another case addressing the retroactive effect of a newly enacted dealership statute. In *McAleer Buick-Pontiac Co. v. General Motors Corp.*, 419 N.E. 2d 608 (Ill. App. Ct. 1981), a dealer attempted to avoid termination of the dealership based on a new law that imposed a good cause requirement for termination. The proposed termination was to take effect *after* the effective date of the law, but the parties entered into the contract that gave the manufacturer its termination right four years before the law was passed. *Id.* at 609. Relying on a "strong presumption" against retroactivity similar to Rhode Island's presumption, the court denied a request for a preliminary injunction and held that the new law could not be applied to the parties' contract: "As GMC points out, Illinois courts always presume that the legislature intends its enactments to operate prospectively, not retroactively. Thus, a law will be applied retroactively only if the legislature has clearly and expressly stated its intention that the law be so applied."

*Id.* (internal citations omitted). The court also expressed concerns about the constitutionality of the statute were it to be applied retroactively, which reinforced the court's decision to read the statute as having only prospective effect. *Id.* at 610-11.[3]

Nothing in Pascale's argument or cited authority can overcome Rhode Island's strong presumption against retroactive application and the canon of statutory interpretation that seeks to avoid collisions with constitutional restrictions.

**B. Pascale Has not Demonstrated the Requisite Threat of Irreparable Harm.**

Pascale asserts that preliminary relief is necessary to avoid irreparable harm to its business, yet fails to carry its burden of demonstrating irreparable harm. As an initial matter, Pascale is mistaken in suggesting that it need not prove irreparable harm because of a statutory mandate requiring a finding of irreparable harm. Pascale misreads RIFDA in this regard. RIFDA does not remove from the preliminary injunction equation the irreparable harm requirement, but rather permits a presumption of irreparable harm where there has been an *actual* violation of RIFDA. R.I. Gen. L. § 6-50-8. Nothing in the statute requires a finding of irreparable harm upon an *allegation* of a violation, or even a finding that the plaintiff is *likely* to prove a violation. Pascale cannot demonstrate a likelihood of success on its RIFDA claim, much less an actual violation, and is thus not entitled to the statutory presumption of irreparable harm.

In addition, even were Pascale's interpretation of the statute correct, effectively vitiating the irreparable harm requirement, such an approach would apply only in state courts. In federal courts, even courts exercising diversity jurisdiction, requests for preliminary injunctions fall

[3] Pascale's brief asserts that Rhode Island's new-vehicle dealership statute has been given retroactive effect. Memo. at 15. Pascale cites to no case so holding. In fact, immediately following this claim, Pascale begins its discussion of *Scuncio*, which held that an amendment to that very act was *not* retroactive. As mentioned, the only other cases that Pascale cites are *Ford* and *Anderson's*, which addressed New Hampshire and Michigan statutes, respectively. It is thus not clear what the basis for Pascale's assertion is, or whether its brief simply contains a typo (such as a missing "not").

within the purview of Fed. R. Civ. P. 65 and the case law that has developed under that rule. Because "the purpose of a preliminary injunction, in contrast to one that is final, is merely to preserve the relative positions of the parties until a trial on the merits can be held," the test that courts have developed "in applying Fed. R. Civ. P. 65 governs what is essentially procedural." *Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (internal quotation marks omitted). "It is federal law, therefore, that controls in this action." *Id.* Federal law requires that a plaintiff seeking a preliminary injunction demonstrate irreparable harm.

Moreover, even were this Court to apply a presumption of irreparable harm, the Court possesses broad discretion over whether to grant temporary injunctive relief. *See Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness*, 649 F.2d 71, 74 (1st Cir. 1981) ("Application for a preliminary injunction is addressed to the discretion of the trial court. . . ."). Nothing prohibits the Court from taking into account the actual facts, discussed below, in considering whether to exercise its discretion to grant the extraordinary relief that Pascale requests. Indeed, notwithstanding the language of RIFDA, it would be improper *not* to consider the relevant facts, given that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original and internal quotation marks omitted). When one considers the complete absence from the record of a showing of irreparable harm, in combination with other facts that Pascale ignores, there is no basis for issuing a preliminary injunction.[4]

[4] Pascale misplaces reliance on the only opinion to which it cites in support of its claim that it need not show irreparable injury. That opinion, *SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975), involved an SEC enforcement action, not a private lawsuit. The Second Circuit pointed to this distinction and held that the four-part test for preliminary injunctions did not apply to such actions brought by a federal agency with statutory enforcement obligations:

Without citation to any evidence, Pascale's brief claims only the following "facts" with respect to the supposed need for injunctive relief: (1) approximately 65% of Pascale's income is derived from ITEC service parts work, (2) termination of the contract would result in over one half of Pascale's workforce being laid off (Pascale does not disclose how many persons this would include), and (3) a significant portion of Pascale's investments into its business would be rendered obsolete. Memo. at 5. These unverified assertions in a brief (which appear contrary to Pascale's own website, as discussed below) fall far short of the "substantial proof" required to justify the extraordinary relief of a preliminary injunction. *Mazurek*, 520 U.S. at 972.

More importantly, Pascale never explains why monetary damages would be inadequate in the event that Pascale were to succeed on its claim. Without such a showing, extraordinary equitable relief of the type Pascale seeks – in this case, effectively forcing ITEC to continue doing business with Pascale – cannot be justified. *See Fireside Nissan, Inc. v. Fanning*, 828 F. Supp. 989, 996 (D.R.I. 1993) (noting the requirement that a party seeking a preliminary injunction demonstrate that it lacks an adequate remedy at law).

In addition, Pascale fails to disclose several critical facts that reveal the baselessness of Pascale's claimed need for a preliminary injunction. First, at a July 27, 2007 in-chambers conference, the Court asked ITEC to consider whether it would refrain from taking further actions to implement the termination of the contract, so as to avoid the need for Pascale to seek

---

> The appellants' crucial error on this score is their assumption that SEC enforcement actions seeking injunctions are governed by criteria identical to those which apply in private injunction suits. Unlike private actions, which are rooted wholly in the equity jurisdiction of the federal court, SEC suits for injunctions are "creatures of statute." Proof of irreparable injury or the inadequacy of other remedies as in the usual suit for injunction is not required.

*Id.* at 808 (internal editing and quotation marks omitted). Pascale makes the same "crucial error" in suggesting that *Management Dynamics* relieves Pascale of the need to show irreparable injury. In fact, the court in *Management Dynamics* held that even in such cases, courts should nevertheless consider all facts when deciding how to exercise their discretion. *Id.*

temporary injunctive relief. ITEC agreed to do so, as part of arrangements that remain in effect. This agreement removes any immediacy with respect to Pascale's claimed insecurity.

Second, while Pascale asserts (without supporting evidence) that 65% of its income is derived from ITEC service parts work, it does not disclose how much of that work depends on its contract with ITEC. Most of the parts that ITEC sells are after-market parts readily available from sources other than ITEC itself. *See* Certification of Steven Mroczkowski in Support of Defendant's Opposition to Plaintiff's Motion for a Preliminary injunction ¶ 9, filed herewith (the "Mroczkowski Cert."). Pascale's claim regarding the percentage of income derived from ITEC parts thus says little about the effect of termination on Pascale's business. Furthermore, according to Pascale's own website, it is a member of VIPAR Heavy Duty, a network of distributors, suppliers, and truck parts customers, which include suppliers of after-market parts. *See* Pascale web page, attached as *Exhibit A* to the Certification of Joshua L. Solomon in Opposition to Plaintiff's Motion for a Preliminary Injunction, filed herewith (the "Solomon Cert.").

Third, Pascale's own website does not represent Pascale as an ITEC dealer. While its website advertises that it is an "authorized parts and service dealers [sic] for **Cummins Diesel Engines and Caterpillar Truck Engines**," it does not mention ITEC in a similar way. *See* Pascale web page, attached as *Exhibit B* to the Solomon Cert. (emphasis in original). Pascale's choice to rely in such advertising on its affiliation with other manufacturers, instead of its affiliation with ITEC, calls into question its claim that its relationship with ITEC is critical and central to its business. In fact, Pascale has, on numerous occasions, rejected opportunities to become a full ITEC dealer. *See* Mroczkowski Cert. ¶ 2.

Finally, upon learning of ITEC's termination of the Agreement, Pascale asserted no objection, made no effort to persuade ITEC to reconsider, and raised no problems with termination. To the contrary, Pascale acknowledged the termination and asked for a 90-day postponement of certain termination steps to permit it to complete customer work and to ensure a smooth termination. *See* Email exchange between A. Fernandez and J. Pascale, attached as *Exhibit 6* to Pascale's Memo. In fact, for almost two and a half months between ITEC's termination and Pascale's filing of suit, Pascale took no steps to protect itself against termination or otherwise to resist termination. Such acquiescence betrays Pascale's claim of exigency.

Pascale's motion for a preliminary injunction fails to address any of these facts, instead relying on conclusory assertions regarding the harm that would supposedly befall Pascale were the termination made effective.

### C. Pascale's Conduct Makes Equitable Relief Unwarranted.

In an attempt to shoehorn this case into RIFDA, Pascale argues that ITEC's termination was not to be effective until June 30, 2007, approximately two weeks after RIFDA's effective date. As discussed above, *see supra* at 7, this attempt fails, as application of RIFDA to the Agreement would violate the principles discussed above regardless of the termination's actual effective date.

But even if Pascale's claim turned on the precise date that the parties' relationship was to conclude once and for all, rather than on the date of the Agreement, or even the date that ITEC exercised its contractual right by sending a termination notice, Pascale's own conduct would make equitable relief inappropriate here. ITEC's termination notice, sent on April 9, 2007, identified May 10, 2007 as the effective date for the termination. Upon receipt of the termination notice, Pascale did not object, and raised no bar to termination. To the contrary, Pascale engaged

in discussions with ITEC purportedly for the purpose of ensuring a smooth termination. Supposedly toward that end, Pascale requested that ITEC postpone certain termination steps, stating that Pascale needed more time to serve its customers, return parts, and square up with ITEC.[5] As mentioned above, not once during this period did Pascale raise any complaint or problem regarding ITEC's termination, until it initiated this action almost two and half months after the termination notice, and just days after RIFDA went into effect.

At best, Pascale's conduct constituted consent to ITEC's termination. Given that this Court possesses broad discretion in deciding whether to provide preliminary injunctive relief, Pascale's consent should factor heavily in any determination as to the propriety of granting such relief. At worst, Pascale deceived ITEC as to its reasons for seeking an extension of the termination's effective date, so as to lure ITEC into a situation which, Pascale believed, would expose ITEC to the impending passage of RIFDA. Pascale has not denied such a plan. To the extent that was Pascale's plan – and the suspicious timing of Pascale's request for an extension, silence for months, and then sudden filing of suit suggest it might have been – Pascale would come to this Court with unclean hands.

As the First Circuit has noted, "[i]t is old hat that a court called upon to do equity should always consider whether the petitioning party has acted in bad faith or with unclean hands." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995). While discovery would likely unearth Pascale's true motivation if this case were to proceed past the pleadings stage, Pascale's consent and the specter of bad faith should give pause with respect to

[5] Pascale's request, and ITEC's acquiescence to that request, are reflected in an email exchange that Pascale attached as *Exhibit 6* to its Memo.

Pascale's request for extraordinary equitable relief, at least to the extent such relief turns on the effective date of termination.

## V. CONCLUSION

For the foregoing reasons, ITEC respectfully requests that the Court deny Pascale's motion for a preliminary injunction.

Respectfully submitted,

INTERNATIONAL TRUCK AND ENGINE CORPORATION,

By its attorneys,

November 5, 2007

/s/ Carl E. Fumarola
Stephen T. Armato, Bar # 6395
Carl E. Fumarola, Bar # 6980
Cetrulo & Capone
The Heritage Building
321 South Main Street
Providence, RI 02903
(401) 274-7850
Fax: (401) 274-9670
Email: sarmato@cetcap.com
cfumarola@cetcap.com

Barry S. Pollack (*pro hac vice*)
Joshua L. Solomon (*pro hac vice*)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
Fax: (617) 338-2880

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2007, the foregoing memorandum in opposition to Plaintiff's motion for a preliminary injunction, filed through the Electronic Cases Filing ("ECF") System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non registered participants.

/s/ Carl E. Fumarola
Carl E. Fumarola