UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PASCALE SERVICE CORP., Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:07-cv-00247-S-DLM |
| INTERNATIONAL TRUCK AND ENGINE CORPORATION and COASTAL INTERNATIONAL TRUCKS, LLC, Defendants. | ) | |

**DEFENDANT INTERNATIONAL TRUCK AND ENGINE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. Argument ........................................................ 1

A. Pascale Has Failed to Overcome Rhode Island's Strong Presumption Against Giving New Statutes Retroactive Effect. ........................................................ 1

B. Pascale's Arguments Have Also Failed to Address the Serious Constitutional Problems That Would Arise Were RIFDA Interpreted to Apply to the Agreement. ........................................................ 9

II. Conclusion ........................................................ 13

Defendant International Truck and Engine Corporation ("ITEC"), by its attorneys, respectfully submits this reply brief in support of its motion to dismiss and in reply to "Plaintiff's Memorandum in Support of its Objection to Defendant International Truck and Engine Corp's Motion to Dismiss and in Support of its Requests for Temporary and Preliminary Injunctive Relief" ("Pascale's Memorandum"), filed by Plaintiff Pascale Service Corp. ("Pascale").[1]

In response to ITEC's motion to dismiss, Pascale abandoned two of its three claims against ITEC. Also since ITEC filed its motion to dismiss, this Court has dismissed defendant Coastal International Trucks, LLC ("Coastal"), and the one claim against it, on the ground that Pascale had fraudulently joined Coastal solely to avoid diversity jurisdiction in this Court. These developments leave only one remaining claim, under the recently enacted Rhode Island Fair Dealership Act, R.I. Gen. L. § 6-50-1, et seq. ("RIFDA").[2] This reply memorandum thus focuses solely on Pascale's RIFDA claim. Furthermore, in accordance with LR. 7(b)(2), this reply brief "consist[s] only of a response to an objection and [does] not present additional grounds for granting the motion, or reargue or expand upon the arguments made in support of the motion."

## I. ARGUMENT

### A. Pascale Has Failed to Overcome Rhode Island's Strong Presumption Against Giving New Statutes Retroactive Effect.

For its RIFDA claim to survive ITEC's motion to dismiss, Pascale would have had to identify in RIFDA "strong language expressing an intent to give a substantive statute retroactive

---

[1] This brief is in reply to that portion of the Pascale Memorandum that addresses ITEC's motion to dismiss. ITEC has opposed Pascale's motion for a preliminary injunction in a separate memorandum.

[2] The abandoned claims are counts II and III of the complaint, for tortious interference with contract and estoppel. *See* Complaint ¶¶ 9-21. In its memorandum, Pascale wrote that its "[c]laims for tortious interference of contract and estoppel contained in the current Complaint shall be waived, pending consideration of Plaintiff's Amended Complaint filed simultaneously herewith." Pascale's Memorandum at 1. While the clause, "pending consideration of Plaintiff's Amended Complaint," renders this sentence, standing alone, unclear as to Pascale's intentions with respect to these two claims, it is clear in context that Pascale has unconditionally abandoned its estoppel and tortious interference claims. Not only has Pascale opted not to include those two claims in its proposed amended complaint, but it also has not opposed ITEC's arguments for dismissal of those two claims.

effect before the presumption of prospective effect may be overcome." *Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10, 12 (1st Cir. 1983) (internal quotation marks omitted). Pascale has not done so. Nor could it, as no such language appears in the statute. Pascale has instead mistakenly applied caselaw concerning "remedial" legislation, sought to obfuscate the timing of ITEC's termination of its contract with Pascale (the "Agreement"), and relied on inapposite cases concerning dealership laws in other states. All three efforts fail to undermine the arguments in ITEC's motion to dismiss.

Pascale's reliance on cases discussing retroactive effects of "remedial" legislation misconstrues the holdings of those cases. *See* Pascale's Memorandum at 13-14 (*citing Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367 (R.I. 1994); *Fox v. Fox*, 350 A.2d 602 (R.I. 1976); and *Grinnell v. Marine Guano & Oil Co.*, 13 R.I. 135 (1880)). Pascale notes that these opinions permit retroactive application of "remedial" laws in certain situations, and that RIFDA identifies itself as a "remedial" statute. From this, Pascale asserts that RIFDA can be applied retroactively here. The flaw in Pascale's reasoning, however, is that the word "remedial" has different meanings in these two contexts. The word "remedial" can be used to refer to a law that grants a *new* substantive remedy or means of redress. It can also refer, however, to a law that relates to the enforcement of an *existing* substantive right. In the latter sense, the term refers to something akin to a procedural change or fix to a preexisting legal regime. *Compare, e.g.*, BLACK'S LAW DICTIONARY (7th Ed. 1999) (first definition of "remedial": "*Affording* or *providing* a remedy; *providing* the means of obtaining redress" (emphasis added)), *with id.* (third definition of "remedial": "Of or relating to a means of enforcing an *existing* substantive right; *procedural*" (emphasis added)).

Pascale improperly conflates these two meanings of "remedial" to assert incorrectly that RIFDA is a "remedial" statute in the sense used in the cases Pascale cites. RIFDA does not represent merely a procedural or mechanical change to the enforcement of preexisting substantive rights. To the contrary, RIFDA created an entirely new statutory regime, granting to dealers a host of legal rights that previously did not exist under Rhode Island law. In contrast, the cases Pascale cites use "remedial" solely and explicitly in the sense of altering existing mechanisms for relief. In fact, those cases expressly distinguish "remedial" laws, as they use the term, from laws that provide substantive rights. For example, in *Pion*, the Rhode Island Supreme Court addressed whether a change to a preexisting law (the workers' compensation statute) should be applied retroactively. In doing so, the court wrote as follows:

> Substantive statutes, which create, define, or regulate substantive legal rights, *must be applied prospectively*. In contrast, remedial and procedural statutes, *which do not impair or increase substantive rights* but rather prescribe methods for enforcing such rights, may be construed to operate retroactively.

*Pion*, 637 A.2d at 371 (emphasis added and internal citation omitted).

Even more to the point, the other two cases Pascale cites expressly state that a statute cannot fall within the "remedial" exception to prospectivity if it impairs existing contractual rights. In one of those cases, which involved a change in the scope of the Family Court's jurisdiction, the Rhode Island Supreme Court held as follows:

> [A] statute lacking the requisite specificity or the necessary implication [for retroactive effect] may still be applied retroactively if it qualifies as a so-called remedial or procedural statute. Such an exception may be employed *if its invocation neither violates vested rights nor impairs contractual obligations*.

*Fox*, 350 A.2d at 604 (emphasis added and internal citation omitted). Similarly, in *Grinnell*, which involved civil joinder procedures, and which Pascale also cites, the Rhode Island Supreme Court explained that "[i]t is not an insuperable objection to a remedial statue that it affects

pending suits, if it affects them remedially, and *neither violates vested rights nor impairs the obligation of contracts*." 13 R.I. at 135 (emphasis added).

Here, not only is it impossible to argue that RIFDA is a mere procedural act, or an act that simply alters a preexisting regime in a non-substantive way, but any retroactive application of RIFDA would significantly affect ITEC's contractual right to terminate the contract with Pascale at will – a right that vested 35 years ago when the Agreement was formed. *See Bob Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 792 (6th Cir. 1999) (holding that the terminating party "acquired its rights under the contract when the parties executed the agreements and not when [it] exercised those rights"). In fact, were RIFDA applied retroactively, it would substantively and dramatically alter the Agreement from one expressly terminable at will, to one that essentially required ITEC to work with Pascale indefinitely. Pascale's own cited cases expressly prohibit such an application. In short, Pascale's reliance on cases involving "remedial" legislation and on RIFDA's self-identification as a "remedial" act is a semantic sleight of hand that cannot overcome Rhode Island's default rule against applying substantive statutes retroactively.

Nor can Pascale save its claim through its suggestion that RIFDA applies because the Agreement's termination was not to take effect until (by agreement of the parties) June 30, 2007, two weeks after the effective date of RIFDA. Because ITEC's at-will termination right vested upon entry into the Agreement, the actual date of termination is irrelevant. Regardless of when ITEC sought to avail itself of the right to terminate, application of RIFDA to prevent ITEC from doing so would strip ITEC of this right, substantively interfering with ITEC's contractual right. Several courts that have faced this very issue have rejected Pascale's reasoning. *See, e.g.*, *Bob Tatone Ford*, 197 F.3d at 792 (statute that limited grounds for termination of dealer did not apply

to agreements that "predated the adoption of the statute," even if the termination post-dated the effective date of the statute because the manufacturer "acquired its rights under the contract when the parties executed the agreements and not when [it] exercised those rights"); *McAleer Buick-Pontiac Co. v. General Motors Corp.*, 419 N.E. 2d 608, 611 (Ill. App. Ct. 1981) ("[R]etroactivity is defined in terms of the effect a law would have on vested contractual rights, not in terms of the time when a party happens to assert those rights.").

In addition, ITEC issued its termination notice on April 9, 2007, more than two months before RIFDA took effect. In fact, the April 9 termination notice set May 10, 2007, also before RIFDA's effective date, as the date on which termination would take effect (the June 30, 2007 date on which Pascale relies resulted from *Pascale's* request and agreement to postpone the implementation of the termination, purportedly for the purpose of ensuring a smooth termination). *See* Email exchange between A. Fernandez and J. Pascale, attached as *Exhibit 6*, to Pascale's Memorandum. Even if the date of the Agreement did not control, the notice date, as opposed to the date for implementation of the termination, would be significant, because the conduct that RIFDA regulates is the timing and contents of termination notices, not each practical step to effectuate a termination. *See* R.I. Gen. L. § 6-50-4. Because ITEC issued its termination notice before RIFDA became law, the relevant action took place before RIFDA went into effect, even assuming *arguendo* that RIFDA could reach any actions under the Agreement.

Finally, Pascale invokes three cases concerning regulations of dealerships. None of these cases supports Pascale's retroactivity position. Pascale's reliance on the first of these three cases, *Ford Motor Co. v. Meredith Motor Co., Inc.*, 257 F.3d 67 (1st Cir. 2001), is unhelpful to Pascale, as that opinion expressly refuses to decide whether a New Hampshire statute regulating dealerships applied retroactively. In fact, the First Circuit in *Ford* actually *vacated* the District

Court opinion that had found the New Hampshire statute to be retroactive, holding that the District Court should have deferred to an ongoing state court proceeding involving the same retroactivity issue and the same parties. *Id.* at 71-73. The First Circuit's *Ford* opinion thus provides no support for Pascale's retroactivity argument.

Furthermore, while suggesting that the vacated District Court opinion concerning the New Hampshire statute is relevant here, Pascale tellingly avoids even so much as a citation to that opinion. Not only did the First Circuit vacate that opinion, but the District Court's reasoning fails to provide Pascale with any support for its claim that RIFDA is retroactive. In fact, the contrast between the situation in *Ford* and the situation here serves only to undermine Pascale's argument. The District Court in *Ford* pointed to two features of the New Hampshire law that the Court viewed as statements of a legislative intent to make the statute retroactive. Such features do not, however, appear in RIFDA. First, the New Hampshire statute was expressly made applicable to "'*all* written or oral agreements.'" *Ford Motor Co. v. Meredith Motor Co.*, No. CIV. 99-456-B, 2000 DNH 186, 2000 WL 1513779, at *5 (D.N.H. Aug. 24, 2000) (internal editing omitted) (*quoting* N.H. Rev. Stat. § 357-C:6I), *vacated by Ford*, 257 F.3d 67. The District Court held that "[t]his language is a clear and unqualified statement of legislative intention to subject both new and existing dealer agreements to the Act's general regulatory requirements." *Id.* Second, the District Court contrasted the "all" agreements language with another provision of the statute that was explicitly limited to "new" agreements. *Id.* (*citing* N.H. Rev. Stat. § 357-C:6II). As the District Court explained, "[i]f the legislature intended to similarly limit the Act's other requirements [to new agreements], it is reasonable to assume that it would have used similar limiting language," rather than the "all" agreements language for which it opted. *Id.* RIFDA not only contains no reference to "all" agreements, but it also does

not contain any clear juxtaposition between a provision that uses all-inclusive language and a provision that is expressly limited to new contracts. Thus, in contrast to the New Hampshire statute, nothing in RIFDA can overcome Rhode Island's presumption against retroactivity, which persists in the absence of "clear, strong language expressing an intent to give a substantive statute retroactive effect." *Scuncio*, 715 F.2d at 12 (internal quotation marks omitted).

Pascale's other two dealership cases similarly support ITEC's position. Neither *Scuncio*, cited above, nor *Anderson's Vehicle Sales, Inc. v. OMC-Lincoln*, 287 N.W. 2d 247 (Mich. Ct. App. 1979), supports Pascale's retroactivity argument. Pascale cites to *Scuncio* simply for its paragraph distinguishing the Michigan Appeals Court's *Anderson's Vehicle Sales* opinion, a case which Pascale erroneously contends supports its retroactivity claim. While citing to *Scuncio* for this purpose, Pascale glosses over the actual holding in *Scuncio*. As discussed in ITEC's motion to dismiss, the First Circuit's *Scuncio* opinion relies explicitly on Rhode Island's strong presumption against retroactivity, acknowledges the Contract Clause problems with retroactivity where there is a preexisting contract, applies the doctrine of interpreting statutes so as to avoid that constitutional problem, and ultimately holds that the statute did *not* have retroactive effect. Far from supporting Pascale's position, *Scuncio* is thus powerful authority against applying RIFDA retroactively.

Nor does the distinction that *Scuncio* recognized between the statute at issue in that case and the Michigan statute at issue in *Anderson's Vehicle Sales* support Pascale's claim. The Michigan statute included the phrase "[n]otwithstanding the terms, provisions, or conditions of a dealer agreement." *Anderson's Vehicle Sales*, 287 N.W. 2d at 249 (internal quotation marks omitted). Without elaboration, the Michigan court found that this language, combined with the fact that the statute was to take immediate effect, suggested a legislative intent to make the

statute retroactive. *Id.* Apparently, the court read the term "notwithstanding" to suggest application to contracts already in existence. RIFDA does not include such a phrase. Instead, RIFDA refers to what contracts "may not" do (§ 6-50-3(C)), a construction that suggests regulation of the formation of future contracts, or that is at least ambiguous as to timing. More importantly, the court in *Anderson's Vehicle Sales* made no mention of any presumption against retroactivity, much less a strong presumption, as exists under Rhode Island law. As a result, the *Anderson's Vehicle Sales* court, applying Michigan law, did not search for "clear, strong language expressing an intent to give a substantive statute retroactive effect," as a court applying Rhode Island law would be required to do. *Scuncio*, 715 F.2d at 12 (internal quotation marks omitted).

Moreover, while noting *Scuncio*'s citation and distinction of *Anderson's Vehicle Sales*, Pascale ignores *Scuncio*'s reliance on another case addressing the retroactive effect of a newly enacted dealership statute. In *McAleer Buick-Pontiac Co. v. General Motors Corp.*, 419 N.E. 2d 608 (Ill. App. Ct. 1981), a dealer attempted to avoid termination of the dealership based on a new law that imposed a good cause requirement for termination. The proposed termination was to take effect *after* the effective date of the law, but the parties entered into the contract that gave the manufacturer its termination right four years before the law was passed. *Id.* at 609. Relying on a "strong presumption" against retroactivity similar to Rhode Island's presumption, the court held that the new law could not be applied to the parties' contract: "As GMC points out, Illinois courts always presume that the legislature intends its enactments to operate prospectively, not retroactively. Thus, a law will be applied retroactively only if the legislature has clearly and expressly stated its intention that the law be so applied." *Id.* (internal citations omitted). The court also expressed concerns about the constitutionality of the statute were it to be applied

retroactively, which reinforced the court's decision to read the statute as having only prospective effect. *Id.* at 610-11.

Rhode Island's strong presumption against giving statutes retroactive effect requires dismissal of Pascale's RIFDA claim against ITEC.[3]

**B. Pascale's Arguments Also Fail to Address the Serious Constitutional Problems That Would Arise Were RIFDA Interpreted to Apply to the Agreement.**

Pascale's Memorandum largely ignores ITEC's argument concerning the constitutional problems posed by Pascale's interpretation of RIFDA. Pascale's argument in this regard consists of nothing more than its reliance on *Ford* and a conclusory assertion that RIFDA's effect on the Agreement would not be "substantial."

Not only does Pascale's reliance on *Ford* suffer from the flaws discussed above, but a critical difference between the *Ford* case and the one before this Court also undercuts Pascale's constitutional argument. As the *Ford* court explained, whether a statute would bring about a "substantial impairment" of a party's contractual rights is among the considerations in determining whether that statute's retroactivity poses a Contracts Clause problem. *See Ford Motor Co. v. Meredith Motor Co.*, No. CIV. 99-456-B, 2000 DNH 186, 2000 WL 1513779, at *6 (D.N.H. Aug. 24, 2000). Indeed, Pascale itself attempts to invoke this consideration (albeit in a conclusory and passing manner) to support its attempt to apply RIFDA retroactively. As the *Ford* court discussed, however, chief among the factors used in assessing "substantial impairment" is the foreseeability of the change in law, as of the time the parties entered into the

[3] Pascale's Memorandum also asserts that Rhode Island's statute governing new-vehicle dealerships has been given retroactive effect. Pascale's Memorandum at 15. Pascale cites to no case so holding. In fact, immediately following this claim, Pascale begins its discussion of *Scuncio*, which held that an amendment to that very act was *not* retroactive. As mentioned, the only other cases that Pascale cites are *Ford* and *Anderson's Vehicle Sales*, which addressed New Hampshire and Michigan statutes, respectively. It is thus not clear what the basis for Pascale's assertion is, or whether Pascale's Memorandum simply contains a typo (such as a missing "not").

contract. *Id.* In *Ford*, the statute at issue imposed certain requirements before a manufacturer could alter a dealer's market area, or add a competitor to that market area. *Id.* at *3. That statute, however, did not fill a void with respect to the regulated matter, as did RIFDA. Rather, the New Hampshire law merely replaced a preexisting statute that already regulated such dealerships, and that was in place when the parties entered into their contract. The old law included a provision that barred "unconscionable" actions against dealers and that gave dealers a right to challenge relocation decisions. *Id.* at *8. Based on this history of similar regulation, which applied at the time the parties entered into their contract, the District Court concluded that the "changes [to the law] are in the direct path of the plausible (though of course not inevitable) evolution of New Hampshire's program for regulating automobile dealership contracts and constituted only small and predictable steps along that path." *Id.* (internal quotation marks and editing omitted).

In contrast, there is no plausible argument that RIFDA was comparably foreseeable when ITEC and Pascale entered into their contract 35 years before RIFDA became law. Nor did RIFDA replace an existing statutory regime that already regulated the relationship between ITEC and Pascale (let alone a regime that regulated the relationship in ways similar to RIFDA's proscriptions). Previously, Rhode Island law impacted only new-vehicle dealerships, not parts suppliers. In addition, RIFDA has not been enacted as a revision to existing law, but rather as a new and independent statute governing relationships previously free from pertinent statutory requirements. In these circumstances, any interpretation of RIFDA that resulted in its application to the Agreement would raise serious constitutional issues, which courts should avoid in interpreting statutes. *See Veilleux v. NBC*, 206 F.3d 92, 122 (1st Cir. 2000) (explaining that state courts, like their federal counterparts, normally seek to avoid constitutional problems when

interpreting state law); *Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 715 F.2d 10, 13 (1st Cir. 1983) ("Any other construction of Rhode Island's 1982 amendment [to the new-vehicles Dealers' Law] would present a serious constitutional question of contract impairment."); *Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994) ("[T]he appellees here cannot reasonably be said to have had fair and appreciable warning of an impending intervention into their agreements. . . . It is absolutely plain, moreover, that the retrospective application of statutes similar to the one here, and in the circumstances that are present in this case, has almost uniformly been held unconstitutional, and this is a datum on which franchisors are presumably allowed to rely while bargaining and in fixing the prices of their licenses."); *McAleer Buick-Pontiac Co. v. General Motors Corp.*, 419 N.E. 2d 608, 611 (Ill. App. Ct. 1981) ("When two constructions of a law are possible and one of them would perhaps render the statute unconstitutional, courts will give the law the construction which avoids the constitutional problem. Our decision to give the Illinois Motor Vehicle Franchise Act only prospective application is, of course, in conformity with this rule of construction.").

Contrary to Pascale's conclusory claim that retroactive application of RIFDA would not "substantially" interfere with ITEC's contract rights, such application would impose on ITEC a substantially different bargain than what it reached decades ago. Rather than a relationship terminable at will, without cause, which is what ITEC bargained and contracted for in 1972, ITEC would be locked indefinitely in a relationship with Pascale, subject to onerous requirements, without any opportunity to adjust the consideration for this new relationship. *See Tatone Ford, Inc. v. Ford Motor Co.*, 197 F.3d 787, 791-92 (6th Cir. 1999) (holding that a statute's retroactive imposition of a "just cause" requirement for termination would constitute a substantial change to a manufacturer's contract rights); *Holiday Inns*, 29 F.3d at 384 (holding

that "[w]e do not think that it can be seriously contested that the retroactive feature of the relevant Iowa legislation substantially impaired the obligations previously owed to the plaintiffs in this case," where one of the effects of the new law was to impose a restriction on "the right of the franchisor to terminate or refuse to renew the agreement"); *McAleer*, 419 N.E. 2d at 611 ("Suffice it to say that requiring GMC to renew perhaps for years a relationship which it had a contractual right not to renew would be a substantial impairment of GMC's contractual rights, bringing into question the constitutionality of the Act. . . ."). Changing the fundamental terms of parties' contractual relationships in this way is exactly the sort of issue that the Contracts Clause addresses. Only a prospective application of RIFDA can avoid this constitutional dilemma.

## II. CONCLUSION

For the foregoing reasons, and the reasons provided in ITEC's opening brief, ITEC respectfully requests that the Court dismiss all three of the complaint's claims against ITEC.

Respectfully submitted,

INTERNATIONAL TRUCK AND ENGINE CORPORATION

By its attorneys,

November 5, 2007

/s/ Carl E. Fumarola
Stephen T. Armato, Bar # 6395
Carl E. Fumarola, Bar # 6980
Cetrulo & Capone LLP
The Heritage Building
321 South Main Street
Providence, RI 02903
(401) 274-7850
Fax: (401) 274-9670
Email: sarmato@cetcap.com
cfumarola@cetcap.com

Barry S. Pollack (*pro hac vice*)
Joshua L. Solomon (*pro hac vice*)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
Fax: (617) 338-2880

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2007, the foregoing reply brief in support of ITEC's motion to dismiss, filed through the Electronic Cases Filing ("ECF") System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non registered participants.

/s/ Carl E. Fumarola
Carl E. Fumarola