UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PASCALE SERVICE CORP., Plaintiff, v. INTERNATIONAL TRUCK AND ENGINE CORP., Defendant. | C.A. No. 07-00247 S |

**MEMORANDUM AND DECISION**

WILLIAM E. SMITH, United States District Judge.

This case involves a dispute between Pascale Service Corporation ("Pascale"), a Rhode Island corporation, and International Truck and Engine Corporation ("International"), a Delaware corporation. Before the Court is International's motion to dismiss. For the reasons set forth below the Defendant's motion is granted.

I. Background

Pascale is a Rhode Island auto parts dealer that has been serving as a dealer and distributor of International's auto parts for over thirty years. Pascale and International first entered into an agreement (the "Agreement") on August 21, 1972, whereby Pascale agreed to act as dealer and distributor for International's parts and also to service International's vehicles. Section 11 of this Agreement provided that "[e]ither party may terminate this

agreement at any time without cause by giving written notice to the other party, specifying the effective date of termination." In a letter dated April 9, 2007, and pursuant to Section 11 of the Agreement, International notified Pascale that it would be terminating the Agreement, effective May 10, 2007. Shortly thereafter, Pascale responded to the termination letter and requested a ninety day extension, stating that it needed more time to wind down its operation. International granted to Pascale an extension to June 30, 2007.

In the midst of the exchanges between Pascal and International, and before the agreed-upon termination date, the Rhode Island legislature enacted the Rhode Island Fair Dealership Act ("FDA" or the "Act"). R.I. Gen. Laws §§ 6-50-1 *et. seq.* Effective as of June 14, 2007, the FDA provides, in pertinent part

> [A] grantor shall provide a dealer at least ninety (90) days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has sixty (60) days in which to rectify any claimed deficiency. If the deficiency is rectified within sixty( 60) days the notice shall be void.

R.I. Gen. Laws § 6-50-4. On June 20, 2007, before the agreed-upon termination date, but after the FDA went into effect, Pascale filed this suit, claiming that International's "proposed termination" violates Rhode Island law, and as such, is a method of unfair

competition, lacks reasonable cause, and is arbitrary, in bad faith, and unconscionable.

## II. Standard of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), "the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences." Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I.1998); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I.1992). The Court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." Roma Constr. Co. V. aRusso, 96 F.3d 566, 569 (1st Cir. 1996); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. Analysis

Pascale's claim rests entirely on its assertion that International's extension of the termination date, from May 10, 2007 to June 30, 2007, places the Agreement within the ambit of the statute. Pascale maintains that the FDA applies retroactively to contracts entered into prior to its taking effect; thus, by virtue of this retroactivity, the provisions of the FDA necessarily govern the termination of the Agreement which, because of International's concession to Pascale's extension request, remained in effect as of

the day the FDA became controlling law. However, FDA Section 6-50-4 is a notice provision, governing the method by which a grantor must provide notice to a dealer of its intent to terminate an ongoing business relationship. International gave Pascale its notice to terminate the Agreement on April 9, 2007. Thus, the FDA, which did not come into effect until June 14, 2007, cannot reasonably apply to International's conduct two months prior, particularly where that conduct was within the agreed-upon terms of the Agreement.

Applying tried and true principles of statutory interpretation, and giving the words of Section 6-50-4 their plain and ordinary meaning, it is clear that the terms of the FDA govern notice of termination, not the termination or cancellation of the dealership agreement itself.[1] See Fleet National Bank v. Hunt, 944

[1] The Court of Appeals of Michigan, dealing with a similar statute which provided that a distributor "shall not terminate, cancel or fail to renew a dealership agreement without giving at least 60 days' written notice of the termination for good cause shown," ultimately determined that because the Michigan statute at issue governed termination, not notice of termination, notice given before the effective date of the relevant statute was null and void. See Anderson's Vehicle Sales, Inc. v. OMC-Lincoln, 287 N.W.2d 247, 248-49 (Mich. Ct. App. 1979) ("We find there is no retroactivity problem with the statute in that it prohibits the 'termination' of the contract and not just the 'notice of termination.'"); but see Willy's Motors, Inc. v. Northwest Kaiser-Willys, 142 F. Supp. 469, 470-71 (D. Minn. 1956) (distinguishing between statutes which prohibit cancellation without just cause as opposed to statutes directed at notice of cancellation). While Anderson's is not controlling law, and is distinguishable on numerous grounds, it should be noted that the Eastern District of Michigan has labeled Anderson's to be "questionable precedent" in the area of retroactivity and franchise laws. See Cloverdale

A.2d 846, 852 (R.I. 2008) ("When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."). Section 6-50-4 does not impose a good or just cause requirement for termination, nor is it phrased to require that no termination may be effectuated without notice being given in accordance with the terms of the statute. Rather, Section 6-50-4 speaks only to notice itself - when it should be given, what it should contain, and how it may be rendered void by the dealer. However, nothing in the FDA indicates that Section 6-50-4 regulates anything but conduct (i.e. - notice) occurring after its effective date. Thus, while the question remains open of whether actions violating the statute and occurring after June 14, 2007 might be prohibited where the contract at issue was entered into prior to June 14, 2007, conduct which occurred before June 14, 2007 unquestionably falls outside the scope of the FDA. See McAndrews v. Fleet Bank of Massachusetts, N.A., 989 F.2d 13, 16 (1st Cir. 1993)("[A] statute's application is usually deemed prospective when it implicates conduct occurring on or after the effective date.").

Because International gave notice of its intent to terminate the Agreement well before the FDA took effect, thereby avoiding the effects and implication of Section 6-50-4, retroactivity is not at

---

Equipment Co. v. Manitowoc Engineering Co., 964 F. Supp. 1152, 1164 (E.D. Mich. 1997).

issue. However, even were the Court to agree with Pascale that cancellation of dealership contracts is wholly controlled by the Act, the result would be no different, and International's motion to dismiss granted all the same. In order for the FDA to apply to this dispute, and to any dealership contract entered into prior to the Act's effective date, the FDA must have retroactive application. However, under Rhode Island law it is generally presumed that statutes are "to operate prospectively unless it appears by clear, strong language or by necessary implication that the Legislature intended to give the statute retroactive effect." Pion v. Bess Eaton Donuts Flour Co., Inc., 637 A.2d 367, 371 (R.I. 1994); Scuncio Motors, Inc. v. Subaru of New England, 715 F.2d 10, 13 (1st Cir. 1983).

Where, as here, there is no express indication that the FDA was meant to be retroactive, the court must examine the Act as a whole to determine if retroactivity can be implied. See VanMarter v. Royal Indemnity Co., 556 A.2d 41, 44 (R.I. 1989); Pion, 637 A.2d at 371. Examination of the Act, including both Sections 6-50-4 and 6-50-3, which sets forth the purpose and rules of construction of the FDA, reveals little implied intent for retroactivity. Yet, Pascale maintains that Section 6-50-3(b)(3), which articulates that a purpose of the FDA is to "provide dealers with rights and remedies in addition to those existing by contract or common law" implies that the Act should have retroactive application even to

existing contracts. However, this language alone does not satisfy the vigorous requirements of Rhode Island law that the words of the statute carry with them "necessary implication" of retroactive intent in order to be given retroactive application. See Emmett v. Town of Coventry, 478 A.2d 571, 572 (R.I. 1984); Newport Yacht Management v. Clark, 567 A.2d 364, 366 (R.I. 1989).[2]

Pascale also maintains that as a remedial statute, the FDA fits into the exception to the general rule that statutes are to be applied prospectively. Even "a statute lacking the requisite specificity or the necessary implication may still be applied retroactively if it qualifies as a remedial or procedural statute." Newport Yacht Management v. Clark, 567 A.2d 364, 366 (R.I. 1989). "Such an exception may be employed [only] if its invocation neither violates vested rights nor impairs contractual obligations." Fox v. Fox, 350 A.2d 602, 604 (R.I. 1976). In support, Pascale cites to Section 6-50-3(a), which establishes that "[t]his chapter shall be liberally construed and applied to promote its underlying remedial purposes and polices." (Emphasis added). However, despite the FDA's articulated remedial purpose, it is not a remedial statute.

---

[2] The Rhode Island Supreme Court, in Theta Properties v. Ronci Realty Co., Inc., 814 A.2d 907, 916 (R.I. 2003) addressed situations in which legislation specifically provides that a law shall be applied retroactively. In those cases, "the clear enunciation of a legislative choice overrides any constructional preference for prospective or retrospective application that might otherwise obtain." Id. (quotations omitted).

For purposes of retroactivity, a remedial statute is one which "affords a remedy, or improves or facilitates remedies already existing for the enforcement or rights of redress of wrongs." Esposito v. O'Hair, 886 A.2d 1197, 1203 (R.I. 2005). A remedial statute is essentially a procedural one - it "neither enlarges nor impairs substantive rights but prescribes the methods and procedures for enforcing such rights." Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864, 869 (R.I. 1987). On the other hand, substantive statutes, which must be applied prospectively, are those which "create, define, or regulate substantive legal rights." Pion, 637 A.2d at 371; see also Newport Yacht Management, 567 A.2d at 366. The language used in Section 6-50-3(a) is not determinative of the outcome here. Rather, as articulated by the Rhode Island Supreme Court in Esposito v. O'Hair, a statute shall not be deemed "remedial" simply by virtue of the Legislature's use of that term or because of the statute's underlying purpose of improving societal woes. 886 A.2d at 1203. If such were the case, effectively all statutes "would be remedial to some degree." Id.

Although Section 6-50-3(a) establishes the Act as having "underlying remedial purposes and policies," the obligations created and rights defined by Section 6-50-4 render the Act a substantive one. By the terms of the Agreement, either Pascale or International may terminate at any time, for any reason, with no specification for notice or opportunity to cure. As with all

elements of a contract, this feature was the result of bargaining between the parties and an exchange of mutual promises and obligations, and became vested when the parties entered their Agreement. See Bob Tatone Ford, Inc. v. Ford Motor Co., 197 F.3d 787, 792 (6th Cir. 1999) (one acquires contract rights upon execution of the contract rather than upon the exercise of those rights). If given retroactive effect, the FDA would significantly alter a balanced, longstanding agreement, binding the dealer, International, into effectively a permanent relationship. See Rolec, Inc. v. Finlay Hydrascreen USA, 917 F. Supp. 67, 69 (D. Me. 1996). In doing so, it would significantly impair and interfere with the vested rights of the parties, and would significantly interfere with the long-established economic relationship between them. Any law which aims to vary or nullify those rights effects substantive and not merely procedural change. See Bob Tatone Ford, 197 F.3d at 792 (deeming substantive statutes which affect the ability of a franchisor to terminate a preexisting agreement).

In sum, as a substantive law creating, defining, and regulating the rights of parties to a dealership agreement, the FDA does not apply retroactively.[3]

---

[3] A state law may be found in violation of the Contracts Clause if it "operate[s] as a substantial impairment of a contractual relationship." Allied Structure Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978); Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co., Inc., 716 A.2d 730, 736 (R.I. 1998). Thus, a contrary construction of the FDA would raise serious constitutional concerns as to the question of contract impairment.

For the foregoing reasons, International's motion to dismiss is GRANTED.

It is so ordered.

WESmith

William E. Smith
United States District Judge
Date: 6/9/08

---

See Scuncio Motors, Inc. v. Subaru of New England, Inc., 715 F.2d 10, 13 (1st Cir. 1983).